852 F.2d 140
 BOARD OF LEVEE COMMISSIONERS OF THE ORLEANS LEVEE BOARD,
Plaintiff-Appellant,
and
Howard, Weil, Labouisse, Friedrichs, Inc., Intervenor-Appellant,
v.
William HULS, Individually and in His Official Capacity as
Secretary of the Department of Natural Resources
of the State of Louisiana, Defendants- Appellees,
and
Gayle, Wichers White, et al., Intervenors-Appellees.
 No. 87-3755.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 15, 1988.
 
 Richard A. Goins, Sam A. LeBlanc, III, New Orleans, La., for Bd. of levee.
 Paul L. Zimmering, Michael R. Fontham, New Orleans, La., for Howard, Weil, LaBouisse, Friedrichs, Inc.
 David C. Kimmel, Elizabeth R. Megginson, Asst. Attys. Gen., La. Dept. of Justice, Baton Rouge, La., for Huls.
 William E. Wright, Jr., David P. Banowetz, Jr., New Orleans, La., for Haspel, David Milling, et al.
 David P. LaNasa, New Orleans, La., for Gayle Wichers White, et al.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, REAVLEY and POLITZ, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 The Board of Commissioners of the Orleans Levee District and intervenors Howard, Weil, Labouisse, Freidrichs, Inc. appeal the district court's grant of summary judgment. We affirm that portion of the district court's judgment dismissing the Board's claim. Because it is now moot, we vacate the judgment against Howard, Weil's constitutional claim and dismiss that claim without prejudice.
 
 
 2
 * The Orleans Levee Board was created by the Louisiana state legislature in 1890. Its purpose was to protect New Orleans from flooding caused by the overflow of the Mississippi River. To that end the legislature in 1924 authorized the Board to expropriate or purchase land to build the Bohemia Spillway in Plaquemines Parish, some 50 miles down river from Orleans Parish. Approximately 51% of the land used for the spillway was purchased or expropriated with the rest being state land. See Board of Comm'rs of the Orleans Levee Dist. v. Depar't of Natural Resources, 496 So.2d 281, 285 (La.1986) (on rehearing).
 
 
 3
 The land proved to be useful for more than just a spillway; it produced large amounts of mineral revenues for the Board. Currently, the land produces approximately five million dollars a year in mineral revenues. Id. Of that, approximately 60%, or three million dollars, is produced from land that was expropriated or purchased from private owners.
 
 
 4
 After enactment of a Louisiana state constitutional amendment permitting such action, the Louisiana legislature enacted Act 233 of 1984. That Act declared that the public and necessary purpose of the land had ceased and ordered it returned to its former owners or their successors. The Louisiana Department of Natural Resources subsequently determined that the Board was not entitled to any compensation for the return of the land.
 
 
 5
 The Board attacked the constitutionality of the Act in both state and federal court. The state court suit focused on state constitutional grounds while the federal suit focused on federal constitutional grounds. Specifically, in this federal suit, the Board alleged that the Act was an unconstitutional taking of the Board's property without just compensation in violation of the Fifth and Fourteenth Amendments. Howard, Weil intervened in both the state and federal suits. They joined the Board in its claims and asserted that the Act impaired their contract as holders of general revenue bonds in violation of the contract clause. U.S. Const. art. 1, Sec. 10.
 
 
 6
 The federal suit was stayed during the pendency of the state suit. The Board and Howard, Weil lost on all issues in state court. See Board of Levee Comm'rs of the Orleans Levee Dist. v. Depar't of Natural Resources, 483 So.2d 958 (La.), on rehearing, 496 So.2d 281 (La.1986). The federal suit was then reactivated. The district court granted the State's[1] motion for summary judgment holding that the suit was barred by the res judicata effects of the state lawsuit. In the alternative, the court held that the Board, a state agency, had no standing to sue the State under the Fourteenth Amendment and that Howard, Weil had no standing to mount a contract clause challenge because it had purchased the bonds after the effective date of the Act.
 
 II
 
 7
 The Fifth Amendment of the United States Constitution states: "nor shall private property be taken for public use, without just compensation." That prohibition applies to the States through the Fourteenth Amendment. Webb's Fabulous Pharmacies v. Beckwith, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). The Board contends that the taking of "their" property violated that constitutional provision. The Board is an agency of the state. Board of Levee Comm'rs, 496 So.2d at 288. The issue then becomes whether an agency of the state may sue the state under the Fifth and Fourteenth Amendments for an uncompensated taking of property. It may not.
 
 
 8
 Virtually the identical issue was raised in City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923). In that case, the city argued that a state tax on the water the city took from the Delaware River violated the contract clause and the due process clause. The Court's holding was clear and unequivocal: those provisions of the Constitution "do not apply against the state in favor of its own municipalities." Id. at 192, 43 S.Ct. at 538. City of Trenton controls our decision. The Board cannot sue the state for an uncompensated taking of property.
 
 
 9
 The Board concedes that if the land were "public land," then its suit cannot be maintained. However, the Board attempts to distinguish between land held for a public purpose and land held in its proprietary or private capacity. The Board argues that Louisiana recognizes that a political subdivision can own land in a "private" capacity. It concedes that the land used for the spillway is held for a public capacity but argues that the mineral rights are held by the Board in their proprietary capacity.
 
 
 10
 We reject these arguments for a number of reasons. The identical argument was raised in City of Trenton. The Court stated:
 
 
 11
 The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations.... The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class.... Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations. But such distinction furnishes no ground for the application of constitutional restraints here sought to be invoked by the city of Trenton against the state of New Jersey.
 
 
 12
 Id. at 191-92, 43 S.Ct. at 538 (emphasis added and footnote omitted). Nevertheless, the Board argues that prior Supreme Court cases have recognized proprietary rights and that City of Trenton should be limited to its facts. Additionally, the Board points to our own case, Rogers v. Brockette, 588 F.2d 1057 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979), that recognized the difference.
 
 
 13
 The Board is correct that prior Supreme Court cases have spoken of the possibility that the "proprietary rights" of a state subdivision may be entitled to constitutional protection. See Hunter v. City of Pittsburgh, 207 U.S. 161, 179-80, 28 S.Ct. 40, 47, 52 L.Ed. 151 (1907); City of Worcester v. Worcester Consol. St. Ry., 196 U.S. 539, 551, 25 S.Ct. 327, 330-31, 49 L.Ed. 591 (1905); City of New Orleans v. New Orleans Water-Works Co., 142 U.S. 79, 91, 12 S.Ct. 142, 147, 35 L.Ed. 943 (1891). But each of these cases held that such a right did not exist in that particular case. Similarly, Rogers, 588 F.2d at 1071, dealt only with the theoretical possibility that a city has standing to sue its state. None of those cases, or any case that we could discover, ever found that a political subdivision properly asserted its constitutional rights to just compensation against its state. See City of Trenton, 262 U.S. at 188, 42 S.Ct. at 537 ("This court has never held that these subdivisions may invoke such restraints upon the power of the state."). In light of City of Trenton 's clear holding to the contrary, we are bound by it.
 
 
 14
 Even if we were to recognize a difference between a political subdivision's "private" and "public" property, we are hardpressed to imagine a situation where constitutional limitations could be asserted against the state. A political subdivision acts for the state. Its power and its property comes about only because it has the power of the state. In the case here, the Levee Board originally obtained the land by employing the power vested by the state to expropriate the land. That power is the state's power. In taking the land, the Board was acting as the state. It is incomprehensible to conceive that that property is now not the state's land. To allow this suit would be to allow the state to sue the state over state land. The interference with a state's organization of itself in such a suit is manifest. That concept is untenable in a federalist system.
 
 
 15
 Continuing, only because of the Board's argument, even if there were a difference between the "public" and "private" ownership of the land, the land in question here is public in nature. The Board argues that, under Louisiana law, it owns the mineral rights in a proprietary or commercial enterprise. We do not follow the purported distinction between the spillway and the mineral rights. None of these interests or revenues could be legally expended for any purpose other than the public purpose to protect New Orleans from flooding. All of the property is public property. Indeed, we need look no further than the Louisiana Supreme Court's opinion in the state lawsuit in this case to answer the Board's argument:
 
 
 16
 as between the state and its agency, property is placed under the control of the agency for supervision and administration, the land to all practical intents and purposes being still the property of the state.
 
 
 17
 Board of Comm'rs, 496 So.2d at 288. We are bound by the Louisiana Supreme Court's interpretation of its own law. The land in question here was state land and the mineral interests were state property. The state could dispose of that land, including its attached mineral interests, as it saw fit.
 
 
 18
 In sum, we conclude that the district court correctly concluded that the Board could not maintain an action against the state on the grounds that Act 233 of 1984 unconstitutionally took their property without just compensation.
 
 III
 
 19
 By this appeal Howard, Weil challenges the Act on the grounds that its enactment violated the contract clause. U.S. Const. art. 1, Sec. 10.[2] The claim is based on some Levee Board bonds that Howard, Weil holds. Those bonds have now matured and Howard, Weil concedes that there is no indication that they would not receive the total value of the bonds if they were redeemed. Due to these circumstances, Howard, Weil has properly conceded that its claim is now moot and that this is not a situation that is an exception to the mootness doctrine. Following our usual course when a case becomes moot on appeal, see Marilyn T., Inc. v. Evans, 803 F.2d 1383, 1385 (5th Cir.1986), we vacate that portion of the district court's decision dealing with the claim of Howard, Weil and dismiss that claim without prejudice.
 
 
 20
 AFFIRMED IN PART, VACATED and DISMISSED IN PART.
 
 
 
 [1]
 The suit named William Huls, then Secretary of the Louisiana Department of Natural Resources, as defendant. The Department is responsible for implementation of the Act. Since the suit attempts to enjoin enforcement of the Act, it is, in essence, a facial attack on the constitutionality of the Act. Therefore, we refer to the defendants simply as the "State."
 
 
 [2]
 Although the Board originally included a contract clause claim in its complaint, it never pursued the issue and only argued the just compensation claim on appeal. Instead, Howard, Weil as intervenors pursued the contract clause claim. We conclude that the Board has abandoned its contract clause claim and that Howard, Weil is the only party with such a claim