UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30728

_____


ANTHONY L. VOGT, et al.

Plaintiffs-Appellants,

versus

BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT,
and JAMES HUEY,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans Division


_____

June 14, 2002


Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In 1984, the Louisiana legislature passed an act ordering the Orleans Levee District to return land it had expropriated in 1924 to build a spillway. The levee district's board of commissioners, however, stalled the return of the property and have until this day fought not to repay mineral royalties that belong to the landowners. In this litigation, the levee district persuaded the district court to dismiss the landowners' constitutional takings claim. We reverse. The district is not immune under the

Eleventh Amendment, and the landowners' pleadings state a takings claim.

## I.   BACKGROUND

The Orleans Levee District was created by the Louisiana legislature in 1890 for the purpose of protecting the City of New Orleans from floods.  In 1924, the state legislature authorized the levee district's Board of Commissioners ("the levee board") to acquire 33,000 acres of land on the east bank of the Mississippi River about 50 miles south of New Orleans in order to build the Bohemia Spillway between the River and the Gulf of Mexico.  1924 La. Acts 99.  Approximately half of this land was public property transferred from the state; the other half was either expropriated or purchased under threat of expropriation from private owners. 1928 La. Acts 246; 1942 La. Acts 311.

In 1984, the Louisiana legislature decided to return the land taken for the Bohemia Spillway.  Act 233 declared

> that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights.  The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation.

2

1984 La. Acts 233; LA. CONST., art. VII, § 14(B). Act 233 also directed the levee board to "provide a thorough accounting . . . concerning all revenues received from the affected property." The Act was signed by the governor and went into effect on June 29, 1984.

The levee board was reluctant to hand over the Bohemia Spillway lands. The expropriated land had "proved to be useful for more than just a spillway," and by the mid-1980s, the levee district was receiving about $3 million a year in mineral royalties from the land the board had expropriated in 1924. Board of Levee Commissioners of the Orleans Levee Dist. v. Huls, 852 F.2d 140, 141 (5th Cir. 1988). The levee board challenged the constitutionality of Act 233, but both state and federal courts rejected the argument that Act 233 was an unlawful taking of the levee district's property in violation of Article I, Section 4 of the Louisiana Constitution as well as the Fifth and Fourteenth Amendments of the United States Constitution. Board of Commissioners of the Orleans Levee Dist. v. Dep't of Natural Resources, 496 So.2d 281, 285 (La. 1986); Huls, 852 F.2d at 141-43.

Following these adverse judgments, the levee board issued quitclaim deeds in 1991 and 1992, and title passed to the original landowners or their successors. However, the levee board refused to remit the mineral royalties that the levee district had received between June 1984 and the time the land was returned.

3

A group of 24 landowners then filed suit in state court requesting (1) a declaratory judgment confirming their ownership of the disputed mineral royalties, (2) an accounting of all mineral royalties paid to the levee board after June 29, 1984, and (3) a money judgment for the royalties that the levee board had not repaid. The Louisiana Court of Appeals held, based on the clear language of Act 233, that the levee board had no right to revenues from the expropriated property after the effective date of Act 233. Vogt v. Board of Levee Commissioners of the Orleans Levee Dist., 680 So.2d 149, 157-59 (La. App. 4 Cir. 1996), *writ denied*, 684 So.2d 923. After an accounting, the Louisiana courts ordered the levee board to reimburse the landowners for $2,853,358.44 in unpaid mineral royalties. Vogt v. Board of Levee Commissioners of the Orleans Levee Dist., 738 So.2d 1142 (La. App. 4 Cir. 1999), *writ denied*, 748 So.2d 1166.

The levee board has refused to satisfy this $2.85 million judgment for unlawfully retaining the mineral royalties from 1984 to 1991-92. The landowners sought a writ of seizure, but Article 12, Section 10(C) of the Louisiana Constitution provides that property of the state, a state agency, or political subdivision is not subject to seizure. The landowners then sought a writ of mandamus, but Louisiana courts have long held that a judgment

4

creditor may not use a writ of mandamus to force a political subdivision to appropriate funds to pay the judgment.[1]

The landowners filed this action in federal court, claiming that the levee board's refusal to pay the judgment is an unconstitutional taking of their property without just compensation. The levee board now asserts that it is an "arm of the state" and is thus entitled to Eleventh Amendment immunity.

The district court concluded, based on "the weight of the case law," that the levee board is an arm of the state. The court granted the levee board's Rule 12(b) motion to dismiss for lack of jurisdiction, and the landowners now appeal. The district court's determinations are reviewed *de novo* as questions of law, like other questions of subject matter jurisdiction. <u>United States v. Texas Tech Univ.</u>, 171 F.3d 279, 288 (5th Cir. 1999).

## II.  ELEVENTH AMENDMENT IMMUNITY

A

Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54, 116 S.Ct.

---

[1]  While this appeal was pending, the Louisiana Court of Appeals affirmed the trial court's orders denying the petitions for writs of mandamus and seizure. <u>Vogt v. Board of Levee Commissioners of the Orleans Levee Dist.</u>, 814 So.2d 648 (La. App. 4 Cir. 2002)("This court recognizes and sympathizes with plaintiffs' plight in getting a judgment against the State or political subdivision satisfied. Nonetheless, this court is without constitutional or statutory authority to compel the Levee Board to pay the judgment rendered against it.").

1114, 1122, 134 L.Ed.2d 252 (1996); Reickenbacker v. Foster, 274 F.3d 974, 976 (5th Cir. 2001). The "ultimate guarantee of the Eleventh Amendment," as the Supreme Court recently stated, is that a non-consenting State may not be sued in federal court by private individuals, including its own citizens. Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001).

Even in cases where the State itself is not a named defendant, the State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the "alter ego" or an "arm" of the State. Regents of the Univ. of California v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 903-04, 137 L.Ed.2d 55 (1997). In other words, the Eleventh Amendment will bar a suit if the defendant state agency is so closely connected to the State that the State itself is "the real, substantial party in interest." Hudson v. City of New Orleans, 174 F.3d 677, 681 (5th Cir. 1999). The Eleventh Amendment will not bar a suit, though, if the political entity "possesses an identity sufficiently distinct" from that of the State. Pendergrass v. Greater New Orleans Expressway Comm'n, 144 F.3d 342, 344 (5th Cir. 1998).

There is no bright-line test for determining whether a political entity is an "arm of the State" for purposes of Eleventh Amendment immunity. Instead, "the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively

6

against the sovereign state." <u>Earles v. State Board of Certified Public Accountants of Louisiana</u>, 139 F.3d 1033, 1037 (5th Cir. 1998). In making this inquiry, this circuit traditionally has considered six factors: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. <u>See</u>, <u>e.g.</u>, <u>Cozzo v. Tangipahoa Parish Council-President Govt.</u>, 279 F.3d 273, 281 (5th Cir. 2002); <u>Anderson v. Red River Waterway Comm'n</u>, 231 F.3d 211, 214 (5th Cir. 2000).[2] "[T]he most significant factor in assessing

---

[2] The Supreme Court applied a different six-factor test in a case involving a multi-state entity created pursuant to the Compact Clause. <u>Lake Country Estates, Inc. v. Tahoe Regional Planning Agency</u>, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). In a later case, also involving a multi-state entity, the Supreme Court focused primarily on the States' liability for a judgment against the entity. <u>Hess v. Port Authority Trans-Hudson Corp.</u>, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

The Fifth Circuit has largely ignored <u>Lake Country Estates</u> and has instead used a six-factor balancing test used for determining whether a state agency is a "citizen" for purposes of diversity jurisdiction. <u>See</u> <u>Richardson v. Southern University</u>, 118 F.3d 450, 452 n.8 (5th Cir. 1997). Moreover, the Fifth Circuit has held that <u>Lake Country Estates</u> and <u>Hess</u> are not applicable where the defendant is a single-state entity (as opposed to a multi-state entity created pursuant to the Compact Clause). <u>Pillsbury Co. v. Port of Corpus Christi Auth.</u> 66 F.3d 103, 104-05 (5th Cir. 1995). The Supreme Court apparently does not believe that its precedents are that limited. <u>See</u> <u>Auer v. Robbins</u>, 519 U.S. 452, 456 n.1, 117 S.Ct. 905, 908 n.1, 137 L.Ed.2d 79 (1997)(applying <u>Lake Country Estates</u> and <u>Hess</u> to determine that the St. Louis Board of Police Commissioners is not an arm of the State of Missouri). And other

an entity's status is whether a judgment against it will be paid with state funds."  Delahoussaye v. City of New Iberia, 937 F.2d 144, 147-48 (5th Cir. 1991).

B

The district court did not discuss these six factors because it concluded that prior decisions of the Fifth Circuit and Louisiana Supreme Court "expressly identified the Levee Board as an arm of the state."  However, the decisions cited by the district court involved issues fundamentally different from the one presented here.[3]

1

The district courts relied in part on the Louisiana Supreme Court's decision in Board of Commissioners of the Orleans Levee Dist. v. Dep't of Natural Resources, 496 So.2d 281, 288 (La. 1986)(holding that "the legislature's divestiture of levee district property does not constitute a taking of property by the state").  While this decision provides a thorough discussion of the scope of the state's police power with respect to political subdivisions, it

circuits that have squarely addressed the issue have concluded that Lake Country Estates and Hess are "no less applicable" in cases involving single-state entities created by state law.  Gray v. Laws, 51 F.3d 426, 432-33 (4th Cir. 1995); Mancuso v. New York State Thruway Auth., 86 F.3d 289, 293 (2d Cir. 1996).

[3]    Two federal district court decisions specifically held that the Orleans Levee District is an arm of the state.  Lange v. Orleans Levee District, 1998 WL 88862 (E.D. La. 1998); Stevens v. Lopez, 1998 WL 13602 (E.D. La. 1998).  For reasons discussed in the body of this opinion, those cases were wrongly decided.

offers little, if any, support for the proposition that the Orleans Levee District is an "arm of the state."[4]

The levee board points out that Board of Commissioners refers several times to the levee district as a "creature or agency of the state". Id. at 285, 289. Contrary to the levee board's assertions, however, calling the levee district a "creature or agency of the state" does not necessarily mean that it is an "arm of the state" within the meaning of Eleventh Amendment jurisprudence. This point has been made repeatedly in our prior decisions. See, e.g., Southwestern Bell Telephone Co. v. City of El Paso, 243 F.3d 936, 939 (5th Cir. 2001); Earles, 139 F.3d at 1036; Richardson v. Southern Univ., 118 F.3d 450, 454 (5th Cir. 1997); McDonald v. Board of Mississippi Levee Commissioners, 832 F.2d 901, 906-07 (5th Cir. 1987)("A reference to the Levee Board as an 'agency' of the state by Mississippi courts does not amount to a characterization of the Levee Board as an arm of the state."); Minton v. St. Bernard Parish Sch. Bd., 803 F.2d 129, 131 (5th Cir. 1986).

The principal reason for distinguishing between a "creature or agency of the state" and an "arm of the state" is that

---

[4] Furthermore, whether a particular political entity is an arm of the state is a question of federal law. See, e.g., Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429-30 n.5, 117 S.Ct. 900, 904 n.5, 137 L.Ed.2d 55 (1997). Even if Board of Commissioners had asserted that the levee district is an arm of the state, this court would not be bound by that pronouncement.

the former concept is far too inclusive to be useful for Eleventh Amendment analysis. As the Supreme Court succinctly observed,

> [U]ltimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates. "[P]olitical subdivisions exist solely at the whim and behest of their State," yet cities and counties do not enjoy Eleventh Amendment immunity.

Hess, 513 U.S. at 47, 115 S.Ct. at 404 (citations omitted).

On this same point, consider the Louisiana Supreme Court's explanation why the property held by the levee district was, "to all practical intents and purposes," still the property of the State itself. Board of Commissioners, 496 So.2d at 288. After determining that flood protection falls within the state's police power, then-Justice Dennis explained that

> [t]he legislature may delegate, either expressly or implicitly, the exercise of the police power to subordinate boards, commissions or political corporations. Such power, however, belongs to the state; the police power may be exercised by agencies of the state only under a delegation of authority. The state retains the right to recall, abrogate or modify the delegation. Consequently, the legislature's prior delegation of police power to its creature or agency, the Orleans Levee District, authorizing it to levy taxes and to acquire land by expropriation, purchase or donation to build a spillway and maintain it for flood protection purposes cannot prevent the state from recalling, abridging or modifying this delegation of power.

Id. at 289-90. The Court's discussion of the State's police power with respect to its "creatures or agencies" makes no distinctions among the subordinate political entities. That is to say, departments within the executive branch, public universities, parishes, sheriff's departments, school boards, and municipalities

10

are all "creatures or agencies of the State." All of these entities exercise "a slice of state power," and all are subject to having their powers recalled, abridged, or modified by the state. Southwestern Bell, 243 F.3d at 937-38, 939; Jacintoport Corp., 762 F.2d at 438. Nevertheless, many of these "creatures or agencies of the State" indisputably are not protected by Eleventh Amendment immunity and cannot be considered arms of the state.

2

The appellees make a similar mistake by relying on this court's decision in Board of Levee Commissioners of the Orleans Levee Dist. v. Huls, 852 F.2d 140 (5th Cir. 1988). The issue in Huls was "whether an agency of the state [the levee district] may sue the state under the Fifth and Fourteenth Amendments for an uncompensated taking of property." Id. at 141. According to the district court, Huls "expressly identified the Levee Board as an arm of the state" and "held that the Levee Board was a state agency that employed the power of the state to expropriate land and therefore could not sue the state for an uncompensated taking of property." The district court's interpretation of Huls conflates two distinct categories: "agency of the state" and "arm of the state".

Huls, like Board of Commissioners, is predicated on the traditional understanding of the state's police power. The court explained that "A political subdivision acts for the state. Its power and its property come about only because it has the power of

11

the state." <u>Huls</u>, 852 F.2d at 143. When the legislature revoked the levee district's authority to hold the Bohemia Spillway property, the levee board (*qua* agent) had no legal right to challenge the decision of the principal.

The focus in <u>Huls</u> is on "political subdivisions" or "agencies of the state" -- categories which include political entities that are beyond the purview of the Eleventh Amendment. Tellingly, the panel in <u>Huls</u> considered itself bound by a Supreme Court decision involving a municipality that sued a State:

> Virtually the identical issue was raised in <u>City of Trenton v. State of New Jersey</u>, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923). In that case, the city argued that a state tax on the water the city took from the Delaware River violated the contract clause and the due process clause. The Court's holding was clear and unequivocal: those provisions of the Constitution "do not apply against the state in favor of its own municipalities." <u>Id.</u> at 192, 43 S.Ct. at 538. <u>City of Trenton</u> controls our decision. The [Levee] Board cannot sue the state for an uncompensated taking of property.

<u>Huls</u>, 852 F.2d at 142.

<u>Huls</u> did *not* hold that the levee board could not sue the State of Louisiana because the levee district was an arm of the state. Instead, <u>Huls</u> held that the levee board was a creature or agency of the state, and, like other creatures of a state -- including municipalities -- the levee board could not prevent the state, in the exercise of its police power, from revoking a prior delegation of authority. As in <u>Board of Commissioners</u>, the levee board's status as an agency or creature of the state is not

12

determinative of the Eleventh Amendment question because many "creatures or agencies" of the state, notably municipalities, are not "arms of the state" for purposes of Eleventh Amendment immunity.

C

The issue here -- whether the Orleans Levee District is an "arm of the state" for purposes of the Eleventh Amendment -- has not yet been decided. We must "examine the particular entity . . . and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." Richardson, 118 F.3d at 452 (citations omitted). This examination is guided by the six factors listed above.

1

**Characterization under state law.** Louisiana statutes define a "levee district" as a "political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits." La. Rev. Stat. Ann. § 38:281(6). A "political subdivision" is defined as any parish, municipality, "special district", school board, sheriff, or "other public or governmental body of any kind which is not a state agency." La. Rev. Stat. Ann. § 13:5102(B); see also Wynat Development Co. v. Board of Levee Commissioners, 710 So.2d 783, 789-90 (1998) (stating

13

that the Orleans Levee District is a "special district" within the meaning of § 13:5102(B)).

The statutory classification of levee districts as "political subdivisions" is significant.  Our decision in Cozzo suggests that "political subdivision" under § 13:5102(B) and "arm of the state" are mutually exclusive.  Cozzo, 279 F.3d at 281-82.  While this may not be a hard-and-fast rule, virtually every other government entity classified as a political subdivision has been denied Eleventh Amendment immunity, perhaps because political subdivisions are more local in character.  Hudson, 174 F.3d at 683-84.  Moreover, political subdivisions are not part of any department within the executive branch of government.  In every recent case in which a Louisiana political entity has been held to be an "arm of the state," the state agency being sued was part of a department within the executive branch.[5]  Our prior decisions have gone so far as to suggest "that all Louisiana executive

---

[5]    See Champagne, 188 F.3d at 313 (Louisiana Department of Public Safety and Corrections); Earles, 139 F.3d at 1037 (State Board of Certified Public Accountants, an agency within the Department of Economic Development); Delahoussaye, 937 F.2d at 147 (University of Southwestern Louisiana, which was governed by the State College and University System, an agency within the Department of Education); Neuwirth v. Louisiana State Board of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988)(Board of Dentistry, an agency within the Department of Health and Human Resources); Darlak v. Bobear, 814 F.2d 1055, 1059 (5th Cir. 1987)(Charity Hospital of New Orleans, which was governed by the Department of Health and Human Resources); Voisin's Oyster House v. Guidry, 799 F.2d 183, 186 (5th Cir. 1986)(Department of Wildlife and Fisheries); Fireman's Fund Ins. Co. v. Department of Transportation and Development, 792 F.2d 1373, 1376 (5th Cir. 1986)(Department of Transportation).

14

departments have Eleventh Amendment immunity." Champagne, 188 F.3d at 313. But in this case, the levee districts are separate political subdivisions and are not constituted as part of the executive branch of government.

Because the Louisiana Constitution and laws classify levee districts as "political subdivisions," which are usually local governmental units with no connection to the executive branch of government, the first factor points against Eleventh Amendment immunity.

2

**Source of the levee district's funding.** This second factor is given the greatest weight because one of the principal purposes of the Eleventh Amendment is to protect state treasuries. Cozzo, 279 F.3d at 281; Jacintoport, 762 F.2d at 440. Although this court traditionally uses the broad phrase "source of funding," our inquiry is more specific: "In assessing this second factor, we conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state liability for the defendant's general debts and obligations." Hudson, 174 F.3d at 687.

The state's liability for a judgment is often measurable by a state's statutes regarding indemnification and assumption of debts. In Hudson, the court focused on the same indemnification provision that is applicable in this case. The statute defining

15

who is a state employee for purposes of indemnification specifically excludes "an official, officer, or employee of a municipality, ward, parish, special district, including without limitation a levee district, school board, parish law enforcement district, or any other political subdivision or local authority." La. Rev. Stat. Ann. § 13:5108.1(E)(3)(a); Hudson, 174 F.3d at 687-88. And the Louisiana Constitution provides that "No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature *or by the political subdivision against which the judgment is rendered*." La. Const. art 12, § 10(C)(emphasis added). Although the legislature has the authority to appropriate funds to pay a judgment against a levee district, the legislature certainly has no legal obligation to do so. Thus, no legal liability arises against the state in the event of a judgment against the levee district or its officers. On the other hand, judgments against state agencies or departments within the executive branch are treated as liabilities of the state itself. See, e.g., Delahouysse, 937 F.2d at 148; Darlak, 814 F.2d at 1059; Voisin's Oyster House, 799 F.3d at 186-87.

The levee board acknowledges that the state has no duty to pay a judgment against the levee district. The levee board has suggested, though, that it could go to the legislature and request that state money be appropriated to pay the judgment. This court

16

has consistently dismissed such arguments as too speculative for Eleventh Amendment analysis: "[W]e do not consider 'a state's voluntary, after-the-fact payment' of a judgment to be a liability against the state's treasury." Williams, 242 F.3d at 321 (quoting Hudson, 174 F.3d at 689). We have left open the possibility that a state entity could show that the legislature -- even where it is not obliged to do so -- regularly appropriates money to pay judgments against the entity. In this case, however, the levee board can point only to an appropriation made in 1942 to reimburse the levee district for expenses incurred when the Orleans Levee District assumed the indebtedness of another levee district. This argument falls far short of demonstrating the legislature's *de facto* recognition of liability for judgments against levee districts.

The next step is to determine whether the state will indirectly fund a judgment against the levee district because the state either is responsible for general debts and obligations or provides the lion's share of the levee district's budget.

The Louisiana Constitution provides that "The full faith and credit of the state shall be pledged to the repayment of all bonds and other evidences of indebtedness issued by the state directly or through any state board, agency, or commission. . . . The full faith and credit of the state is not hereby pledged to the repayment of bonds of a levee district, political subdivision, or

17

local public agency." La. Const. art 7, § 6. Therefore, while the levee district has been granted the authority to issue bonds and incur debts, those debts are not backed by the state. See also Pendergrass, 144 F.3d at 345, 346.

With regard to the more general question of the levee district's budget, the Orleans Levee District receives very little funding from the state. The levee district generates its own revenues from the Lakefront airport, a casino, leases of property, fees from boatslips and marinas, and taxes. The district also receives income from various investment accounts currently worth $57 million. The levee board does not dispute these facts. At oral argument, counsel for the levee board pointed out that the district receives some state funds, even though they are usually in the form of capital outlays dedicated to specific projects. Because the state funds are already earmarked for other purposes, the state monies cannot be used to pay a judgment against the levee district. See Hudson, 174 F.3d at 688-89.

The levee board further contends that the State of Louisiana provides funds to the levee district indirectly, by allowing the district to levy taxes on property within the district. However, the levee district's exercise of a delegated power to tax does not speak to the question before us, namely, whether a judgment against the levee district will be paid out of the state treasury. See Williams, 242 F.3d at 320.

18

To sum up: The second factor (source of funds) points against Eleventh Amendment immunity. The Orleans Levee District is almost entirely self-supporting, and the funds provided by the State are earmarked for special projects. The levee district has the authority to tax and issue bonds, although the state specifically disclaims responsibility for any debts of the levee district. Of greatest significance is that nothing in Louisiana law, or in recent practice, suggests that the State has any obligation with respect to judgments against the levee district.

3

**Degree of local autonomy.** "In our circuit, . . . the determination of an agency's autonomy requires analysis of the 'extent of the [entity's] independent management authority' . . . [as well as] the independence of the individual commissioners" who govern the entity. Jacintoport, 762 F.2d at 442.

The Orleans Levee District has considerable "management authority," as that term has been applied in Fifth Circuit caselaw. For example, the levee district is granted "full and exclusive right, jurisdiction, power and authority" over all levee-related matters within its territorial reach. La. Rev. Stat. Ann. § 38:307(A). Each levee district has the authority to issue bonds, raise taxes (up to a certain rate), and make all contracts necessary to perform their functions. La. Rev. Stat. Ann. §§ 38:314, 38:335, 38:431, 38:401, 38:404, 38:306(A). The levee board

19

has the authority to sell, lease, or otherwise dispose of property for the purpose of raising funds. La. Rev. Stat. Ann. § 38:336(A).

In carrying out these functions, the levee board operates with no oversight from the executive branch of government. <u>Cf.</u> <u>Darlak</u>, 814 F.2d at 1059-60 (emphasizing that the Charity Hospital of New Orleans was "under the direct control of the executive branch of government"). Furthermore, the state legislature exercises no oversight with respect to the levee district's budgetary matters, except perhaps to the limited extent that the district is subject to audits. <u>See</u> <u>Williams</u>, 242 F.3d at 321. On the whole, however, no branch of state government exercises "supervisory control" over the day-to-day operations of the levee district, and that fact counsels against Eleventh Amendment immunity here. <u>McDonald</u>, 832 F.2d at 907; <u>see</u> <u>also Williams</u>, 242 F.3d at 321-22; <u>Minton</u>, 803 F.2d at 131-32.

The levee board correctly points out, however, that six of the eight commissioners serve at the pleasure of the Governor. La. Rev. Stat. Ann. § 38.291(K). Although the "vulnerability of the commissioners to the governor's pleasure militates against a finding of local autonomy," <u>Jacintoport</u>, 762 F.2d at 442, in this case, the governor's discretion is limited by statutory requirements that a commissioner must be a resident of the levee district and recommended by the local legislative delegation. La. Rev. Stat. Ann. § 38:304. This court stated in <u>Pendergrass</u> that residency requirements and local nominations (along with fixed

20

terms, which are not present here) "tug[ged] strongly" in favor of a finding of local autonomy, in spite of the governor's role in the appointment process. Pendergrass, 144 F.3d at 347. Moreover, Jacintoport suggests that the appointment process is given less weight than the scope of the entity's authority over its day-to-day activities. Jacintoport, 762 F.2d at 442. On balance, then, the levee district's considerable degree of local autonomy supports a finding of no Eleventh Amendment immunity.

4

**Local versus statewide problems.** This factor "properly centers on 'whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants.'" Williams, 242 F.3d at 322 (quoting Pendergrass, 144 F.3d at 347).

Limited territorial boundaries suggest that an agency is not an arm of the state. See, e.g., Cozzo, 279 F.3d at 282 (noting that a sheriff's duties are "generally performed only within a single parish"); Hudson, 174 F.3d at 690-91 ("[W]e have found it highly useful to examine the geographic reach of the district attorney's prosecutorial powers."). The levee district's powers, considerable as they are, may be exercised only within clearly defined territorial limits. La. Rev. Stat. Ann. § 38:281(6). On the other hand, most entities that are entitled to Eleventh Amendment immunity have statewide jurisdiction. See Earles, 139

21

F.3d at 1038 ("The Board is concerned with regulating the practice of public accounting on a statewide, rather than a local, scale. This factor favors Eleventh Amendment immunity for the Board."); Neuwirth, 845 F.2d at 556 (same for Board of Dentistry); Voisin's Oyster House, 799 F.2d at 187 (same for Department of Wildlife and Fisheries).

The levee board's counter-argument is that the levee district is concerned with a statewide problem -- flooding -- and that the nature of the problem outweighs the narrow geographic boundaries of the levee district. However, primary education and law enforcement are also statewide concerns, yet school boards and sheriffs are not arms of the state. See Minton, 803 F.2d at 131-32; Cozzo, 279 F.3d at 282. As a general principle, then, the "arm of the state" analysis focuses on the tasks undertaken by the particular defendant. An exception may apply where the regional entity is an administrative division of a statewide system. See Williams, 242 F.3d at 321-22 & n.10; Delahoussye, 937 F.2d at 148 (characterizing the University of Southwestern Louisiana as "only one component of the State College and Universities System"). But in this case, the 19 levee districts in the State of Louisiana are distinct entities and are not parts of a larger system.

In a case involving a levee district in Mississippi, this court observed, "While flood control along the Mississippi River is undoubtedly important to the State of Mississippi, the problem of immediate and primary concern to the Levee Board is the maintenance

22

of the levee within its district." <u>McDonald v. Board of Mississippi Levee Commissioners</u>, 832 F.2d 901, 908 (5th Cir. 1987). The same may be said of the Orleans Levee District. The fourth factor thus cuts against the levee district's entitlement to Eleventh Amendment immunity.

5

**Authority to sue.** Each levee district "may sue and be sued under the style of Board of Commissioners for the respective district." La. Rev. Stat. Ann. § 38:309(B). The levee board acknowledges the relevant statute but insists that the fifth factor (along with the sixth factor) is accorded significantly less weight than the others. <u>See</u>, <u>e.g.</u>, <u>Cozzo</u>, 279 F.3d at 281.

6

**Right to hold property.** Louisiana statutes provide that "Each board of commissioners may buy and hold, sell and transfer, or exchange property." La. Rev. Stat. Ann. §§ 38:306(A); <u>see</u> <u>also</u> La. Rev. Stat. Ann. 38:307 (outlining the specific powers of the Orleans Levee District). Nevertheless, the levee board insists that its right to use and hold property is "limited." The board cites <u>Huls</u> for the proposition that all of its property ultimately belongs to the state and that the levee district is merely exercising a delegated power. This argument misses the point; the relevant question is whether the levee district has the right to hold property in its own name, and it clearly does. This final

23

factor -- like all of the others -- points away from Eleventh Amendment immunity.

D

In sum, consideration of the six factors leads to the conclusion that the Orleans Levee District is not an arm of the State of Louisiana for purposes of Eleventh Amendment immunity. The district court erred in dismissing the landowners' action for lack of jurisdiction.[6]

### III.  TAKINGS CLAIM

Since the district court had jurisdiction over this claim against the levee board, the case must be reversed and remanded for resolution on the merits.  Although we express no opinion on the ultimate outcome, a brief word is necessary to clarify a single point discussed by both parties on appeal.

The levee board's attorney began his presentation at oral argument by saying, "I think it's clear this is not a takings case."  The levee board argued in its motion to dismiss and in its brief on appeal that the landowners' "property" -- in the form of a judgment enforceable "through the processes set forth by the legislature" -- has not been taken and that the landowners' putative takings claim is nothing more than a suit to enforce a

---

[6]     In light of the resolution of this issue, we need not address the landowners' alternative argument that, even if the levee district were considered an arm of the State, the Eleventh Amendment would not bar their suit because the requested relief could be characterized as a "purely prospective order" directing the levee board to return the landowners' property.

24

judgment against the board.[7]  If the landowners ultimately prevail, the levee board continues, then every judgment creditor of a political entity is a potential plaintiff in a takings claim.

The landowners, on the other hand, emphasize that the right to receive mineral royalties is a recognized property interest under Louisiana law and that there is no longer any doubt as to ownership of the disputed royalties.  As the state court judgments made clear, the landowners' interests in $2.85 million in royalties were settled by the passage of Act 233, and their claims for the property have since been reduced to judgment.  Vogt, 680 So.2d at 158; Vogt, 738 So.2d at 1143-44.  According to the landowners, the levee board's refusal to satisfy the judgment and pay over the retained royalties constitutes a taking because the governmental entity is withholding private property from its owners, without offering compensation and without asserting a public purpose or any police power or other reasonable regulatory justification for the action.  See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 163-64, 101 S.Ct. 446, 452, 66 L.Ed.2d 358 (1980); NOWAK & ROTUNDA, CONSTITUTIONAL LAW, § 15:12.

The only point requiring resolution at this stage is the levee board's insistence that the landowners' suit is not a takings claim but merely an attempt to execute the judgment of the state

---

[7]    This court has the discretionary authority to decide issues of law, presented in the court below, where the relevant facts are uncontroverted and the proper resolution of the issue is beyond doubt.  Green v. Levi's Motors, Inc., 179 F.3d 286, 293 (5th Cir. 1999).

25

courts. We find no support for the levee board's premise that a decree of the Louisiana courts somehow converted private property (the mineral royalties) into public funds subject to an unenforceable lien. Cf. Webb's Fabulous Pharmacies, 449 U.S. at 163-64, 101 S.Ct. at 452 ("[A] State, by *ipse dixit*, may not transform private property into public property without compensation."). In the levee board's view, the state courts' holding that the landowners' judgment is unenforceable against the levee board effectively re-characterizes their property right in mineral royalties into an intangible claim against the levee board's property. Vogt, 814 So.2d 648. What was the landowners' property has suddenly vanished behind a veil of sovereign immunity in state court. We hold, however, that this result is untenable against a federal takings claim.

We do not hold or imply, as the levee board contends, that every tort or breach of contract claim against a governmental entity necessarily becomes a takings claim. Our holding extends only to cases where, as in Webb's, the government has forcibly appropriated private property without a claim of right or of public or regulatory purpose.

Having clarified this preliminary point of law, we express no further opinion on the ultimate outcome of this case.

26

## IV. CONCLUSION

For the foregoing reasons, the judgment of dismissal is REVERSED and the case REMANDED for further proceedings consistent herewith.

**REVERSED** and **REMANDED**.

27