REVISED JANUARY 16, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2007

Charles R. Fulbruge III
Clerk

No. 07-30348


UNITED DISASTER RESPONSE, LLC,

                              Plaintiff-
                              Counter Defendant-
                              Appellee,

v.

OMNI PINNACLE, LLC,

                              Defendant-
                              Cross Claimant-
                              Counter Claimant-
                              Appellee,

v.

ST. TAMMANY PARISH,

                              Defendant-
                              Cross Defendant-
                              Appellant.


Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:06-CV-6075

Before REAVLEY, SMITH, and GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Omni Pinnacle, LLC ("Omni"), contracted with St. Tammany Parish to perform post-hurricane repairs. Omni subcontracted with United Disaster Response, LLC ("United"). Alleging that additional payment was due, United sued Omni and the parish, and Omni counterclaimed against United and cross-claimed against the Parish. Citing the Eleventh Amendment, Louisiana state law, and a choice-of-forum clause in the contract, the parish moved to dismiss. The district court rejected the parish's arguments. We affirm in part and dismiss in part.

I.

The parish entered into a contract with Omni to help with repairs after a storm or other disaster. Omni then subcontracted with United. After hurricanes Katrina and Rita, the Parish called Omni—and, by extension, United—into action.

Because of a disagreement about the work provided, the parish made only partial payment to Omni, which in turn only partially paid United. Invoking diversity jurisdiction under 28 U.S.C. § 1332, United sued Omni and the parish for full payment; Omni counterclaimed against United and cross-claimed against the parish.

In response to United's and Omni's claims, the parish filed a Federal Rule of Civil Procedure 12(b) motion to dismiss. The parish argued that it had immunity under the Eleventh Amendment and Louisiana law and that the contract contains, by reference, a mandatory choice-of-forum clause stating that "[t]he 22nd Judicial District Court for the Parish of St. Tammany shall be the court of original jurisdiction of any litigation originated under this contract."

The district court denied the motion, ruling that the parish is not an "arm of the state" and that the choice-of-forum clause is not exclusive. The court did not address the state law argument. The parish appeals, basing appellate jurisdiction on the collateral order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).

## II.

We review questions of immunity de novo. United States v. Texas Tech Univ., 171 F.3d 279, 288 (5th Cir. 1999). We do the same for constructions of choice-of-forum clauses. Afram Carriers, Inc. v. Moeykens, 145 F.3d 298, 301 (5th Cir. 1998).

## III.

We first confront whether the district court erred in failing expressly to apply the six-prong test of Delahoussaye v. City of New Iberia, 937 F.2d 144, 147 (5th Cir. 1991).[1] The parish argues that under Flores v. Cameron County, 92 F.3d 258, 268 (5th Cir. 1996), the court was required to apply Delahoussaye because "analogies between like entities cannot replace consideration of the six relevant factors." The district court did not err. This is not a case with such extraordinary circumstances that we can find that the parish is an "arm of the state"

---

[1] Because "[t]here is no bright-line test for determining whether a political entity is an 'arm of the State' for purposes of Eleventh Amendment immunity," Vogt v. Bd. of Commr's Orleans Levee Dist., 294 F.3d 684, 689 (5th Cir. 2002), in Delahoussaye, 937 F.2d at 147, we held that courts should consider six factors:

> (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

notwithstanding the holding in County of Lincoln v. Luning, 133 U.S. 529, 530 (1889), that "the Eleventh Amendment limits . . . jurisdiction only as to suits against a state" and not against counties and parishes.

We addressed this issue at length in Crane v. Texas, 759 F.2d 412 (5th Cir.), amended in part on denial of rehearing, 766 F.2d 193 (5th Cir. 1985), noting that the Supreme Court has repeatedly stated "that the Eleventh Amendment does not apply to counties and similar municipal corporations." Id. at 415 (internal citations and quotations omitted). We went so far as to characterize the Court's statements to be "unambiguous" and listed at length the "abundance of authority holding the Eleventh Amendment inapplicable to counties . . . ." Id. at 416 (internal citations omitted). Holding that these "authorities . . . establish without question that Eleventh Amendment immunity does not, as a general rule, extend to counties," we further stated that "no exception should be made to this rule without convincing evidence distinguishing the county in question from counties generally." Id. at 417. In deciding whether this "convincing" showing could be made, we noted that "the most crucial factor . . . is whether the funds to defray any award would be derived from the state treasury," id. (internal citations and quotations omitted), but even then we took special care to emphasize the need for "payment of the judgment . . . to be made directly from the state treasury," id. (internal citations and quotations omitted). This is a demanding standard.[2]

Though the district court should have more pellucidly explained why the parish was not entitled to immunity, the court was not mistaken in denying the motion to dismiss: The parish cannot show with "convincing evidence" that it is

---

[2] It is so demanding, in fact, that the parish cites no case in which a county or parish was held to be an arm of the state. Given this dearth of supportive caselaw, it is not surprising that "[i]t is settled law that the parishes are not protected from suit by the eleventh amendment." United States v. St. Bernard Parish, 756 F.2d 1116, 1126 (5th Cir. 1985).

distinguishable from parishes or "counties generally."

The parish properly concedes some of the Delahoussaye factors. For instance, the parish can sue and be sued in its own name and can hold and use property. Likewise, Louisiana law does not characterize the parish as an arm of the state.[3]

For Delahoussaye factors three and four, the factors relating to the parish's autonomy and scope of authority, the parish attempts to create a special[4] rule for hurricanes: Where a hurricane or another wide-scale disaster is involved, the parish is entitled to Eleventh Amendment immunity because of the Louisiana Homeland Security and Emergency Assistance and Disaster Act, LSA-R.S. §§ 29:721 et seq. The act states that "[e]ach political subdivision . . . shall be within the jurisdiction of and served by the Governor's Office of Homeland Security and Emergency Preparedness . . . and by a parish homeland security and emergency preparedness agency responsible for emergenc[ies]. . . .," id. § 29:727(A), and requires each parish's office of homeland security and emergency preparedness to coordinate with federal and state agencies, id. § 29:729-(B)(11). The act also requires that parishes prepare emergency plans for various

---

[3] The parish, a "political subdivision" under Louisiana law, only indirectly concedes this factor, but

> [t]he statutory classification of . . . "political subdivisions" is significant. Our decision in Cozzo [v. Tangipahoa Parish Council, 279 F.3d 273, 281-82 (5th Cir. 2002] suggests that "political subdivision" . . . and "arm of the state" are mutually exclusive. While this may not be a hard-and-fast rule, virtually every other government entity classified as a political subdivision has been denied Eleventh Amendment immunity . . . . Moreover, political subdivisions are not part of any department within the executive branch of government. In every recent case in which a Louisiana political entity has been held to be an "arm of the state," the state agency being sued was part of a department within the executive branch.

Vogt, 294 F.3d at 692.

[4] The parish acknowledges that it "generally enjoys independent management of Parish affairs."

5

threats. Id. § 29:729.

The parish's argument is unconvincing. Merely requiring the parish and the state to cooperate does not transform the parish into the state, and the parish offers no cases to support the contrary conclusion. The degree of state intrusion into the parish's autonomy is not dramatic. The act explains that "[t]he parish office of homeland security and emergency preparedness under the parish president, shall be responsible for homeland security and emergency preparedness in the parish," id. § 29:729(A); "[e]ach parish office of homeland security and emergency preparedness . . . shall have a director . . . [who] shall serve at the pleasure of the parish president," id. § 29:728(A); and the director "shall have direct responsibility for the organization, administration, and operation of such local organization for homeland security and emergency preparedness," with the governor merely having "general direction and control," id. § 29:728(C). The act does not make the parish an arm of the state.

The parish's argument that it is concerned with statewide problems under the fourth Delahoussaye factor suffers from additional flaws. In Vogt, 294 F.3d at 695, a case concerning a levee district, we stated that "[l]imited territorial boundaries suggest that an agency is not an arm of the state" and "most entities that are entitled to Eleventh Amendment immunity have statewide jurisdiction." The parish obviously has a limited territorial boundary. Vogt forecloses another of the parish's arguments, that somehow its efforts facilitate statewide recovery and thus render the it an arm of the state: "The levee board's counter-argument is that the levee district is concerned with a statewide problemSSfloodingSSand that the nature of the problem outweighs the narrow geographic boundaries of the levee district. However, primary education and law enforcement are also statewide concerns, yet school boards and sheriffs are not arms of the state." Id.

Thus, the parish's only real hope is the second Delahoussaye factor: the source of funds used. The parish argues that because all of its hurricane recov-

ery funds come from the federal government, channeled through the state, it is an arm of the state. But this is incorrect. There is no formal requirement for Louisiana to pay a judgment to Omni or United, if such a judgment is rendered. The state may choose to reimburse the parish, but that is not enough. Vogt, 294 F.3d at 693.

As we explained in Vogt, under Louisiana statutory and constitutional law the state has no duty to indemnify any judgment against its political subdivisions, including parishes. Id. "Although the legislature has the authority to appropriate funds to pay a judgment against a [political subdivision], the legislature certainly has no legal obligation to do so. Thus, no legal liability arises against the state in the event of a judgment against [a political subdivision] or its officers." Id. Such a "request" for "state money [to] be appropriated to pay the judgment [is] too speculative for Eleventh Amendment analysis." Id.[5]

## IV.

The parish contends that Louisiana law protects it from suit in a federal court sitting in diversity.[6] A Louisiana statute provides that "[n]o suit against

---

[5] In Vogt, 294 F.3d at 693, we did note that "[w]e have left open the possibility that a state entity could show that the legislatureSSeven where it is not obliged to do soSSregularly appropriates money to pay judgments against the entity." The parish does not argue that there is a regular practice of the state's paying the parish's judgments, so we need not consider that question.

[6] Though the collateral order doctrine gives us jurisdiction to consider the parish's Eleventh Amendment claims, see e.g., P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993) ("We hold that States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."), we must decide whether the doctrine also gives us jurisdiction over this state law argument, which, though similar to Eleventh Amendment immunity, is not identical to it. Under Cohen, there is collateral jurisdiction if the interlocutory order conclusively determines the disputed question, resolves an important issue separate from the merits, and cannot be effectively reviewed on appeal from a final judgment. The reasoning of Puerto Rico Aqueduct, 506 U.S. at 144, applies here: If "a State and its 'arms' are, in effect, immune from suit in federal court, it follows that the elements of the . . . collateral
(continued...)

the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." LSA-R.S. § 13:5106(A). From this, the parish argues that it cannot be sued in federal court.

The parish's contention is nearly frivolous. We have already addressed the same issue involving the same statute. In In re Allied-Signal, Inc., 919 F.2d 277 (5th Cir. 1990), we decided "whether a political subdivision, which pursuant to state statute [i.e. § 13:5106(A)] may be only sued in the state courts of Louisiana, and which, we assume, does not enjoy Eleventh Amendment immunity, may be sued in federal district court under diversity of citizenship jurisdiction." Id. at 278.

Notwithstanding Erie,[7] we held that such suits can be brought in federal court.[8] "[P]olitical subdivisions that have waived common law immunity, but that do not enjoy Eleventh Amendment immunity under federal law, can be sued in federal courts under diversity jurisdiction without regard to state statutory provisions to the contrary." Id. at 280 n.4 (citing Chicot County v. Sherwood, 148 U.S. 529, 533-34 (1893)).[9] Allied-Signal is on point here.[10]

---

[6] (...continued)
order doctrine are satisfied." Therefore, we have jurisdiction over this question.

[7] Erie R.R. v. Tompkins, 304 U.S. 64 (1938).

[8] It is "clear . . . that governmental units not covered by the Eleventh Amendment are suable in federal court, even in actions based solely on diversity jurisdiction. Thus, even when a state creates governmental units that it wishes to be immune from suit in federal court, a federal court may disregard the state's wishes." 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3524 (2d ed. 1987), at 213-14. See also Markham v. City of Newport News, 292 F.2d 711, 718 (4th Cir. 1961) ("It would be quite foreign to the Erie doctrine . . . to apply a state statute in such a way as to deny all relief in a federal court to a nonresident plaintiff on a cause of action which, clearly, the state courts could recognize and enforce. Erie requires that the federal court grant or withhold relief as the state courts would. It does not require relegation of the diversity jurisdiction to the mercies of the legislatures of fifty separate states.").

[9] See also N.Y. Life Ins. Co. v. Plaquemines Parish Comm'n Council, No. 91-0909, 1991 WL 161512, at *2 (E.D. La. Aug. 13, 1991) ("The fault with Plaquemine Parish's argument is
(continued...)

V.

The parish's final argument is that the district court misconstrued the contract's choice-of-forum clause, which the parish argues allows suit to be brought only in the parish's 22nd Judicial District Court. Because, however, this is an interlocutory appeal, we do not have jurisdiction to consider the issue.

Under 28 U.S.C. § 1291, unless one of the limited exceptions to the final judgment rule applies, we can review only "final decisions." One such exception is the collateral order doctrine. The parish attempts to invoke that exception as a basis for appellate review of the choice-of-forum determination.[11]

Precedent, however, forecloses the parish's argument. In Louisiana Ice Cream Distributors, Inc. v. Carvel Corp., 821 F.2d 1031 1032 (5th Cir. 1987), we considered a contract with a choice-of-forum clause stating "that 'New York shall be a forum where any cause of action arising under this Agreement may be instituted.'" Id. at 1032. There, plaintiff sued in the Eastern District of Louisiana. The defendant unsuccessfully moved under Federal Rule of Civil Procedure 12(b)(3) to dismiss for improper venue.

---

[9] (...continued) that it never had Eleventh Amendment immunity . . . . Plaquemines Parish is a 'political subdivision' of the State of Louisiana. Plaquemines Parish is not an arm of the state immune from suit in federal court under the Eleventh Amendment. Therefore, Plaquemines Parish may be sued in federal court under diversity jurisdiction notwithstanding State statutory provisions, such as § 13:5106(A), that purport to limit the waiver of common law immunity to state court actions.").

[10] The Parish puts far too much weight on the fact that Allied-Signal involved a petition for writ of mandamus. The district court in Allied-Signal remanded to state court, after removal, "expressly and affirmatively bas[ing] its decision to remand on 13:5106(A)." Allied Signal, 919 F.2d at 280. We granted mandamus "to correct [the] district court's remand order and [to] require it to entertain an action when it has been expressly and incorrectly remanded." Id. at 281. Thus, we directly ruled on the merits of § 13:5106(A).

[11] Likely realizing that its collateral order doctrine argument is flawed, the parish asserts in its reply brief that this court has pendent appellate jurisdiction over the denial of the motion to dismiss on the choice-of-forum clause. That argument is waived. Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief.").

On interlocutory appeal, we held that "[t]he denial of a motion to dismiss for improper venue is not a final order under 28 U.S.C. § 1291. Rather, it is an interlocutory order which is not subject to immediate appeal." Id. We likewise held that the matter did not "fall[] within the ambit of the collateral order doctrine." Id.

The facts in Louisiana Ice Cream are for all relevant purposes identical to those here. Therefore, we lack jurisdiction to review this aspect of the district court's decision, so that portion of this appeal is dismissed.[12]

The order denying the motion to dismiss is AFFIRMED, and the appeal of the order regarding the choice-of-forum clause is DISMISSED.

---

[12] After the district court ruled in this case, another judge in the same district, in Top Branch Tree Serv. & Landscaping, Inc. v. Omni Pinacle, LLC, No. 06-3723, 2007 WL 1234976 (E.D. La. Apr. 26, 2007), dismissed a similar claim against the parish based on the same choice-of-forum clause. The Parish argues that Top Branch should have collateral estoppelSSmistakenly labeled res judicataSSeffect here. That is incorrect. Because our jurisdiction under the collateral order doctrine is "extraordinarily limited," Anchor Hocking v. Willamette Indus., Inc., 694 F.2d 1041, 1042 (5th Cir. 1983), and because collateral estoppel is a nonjurisdictional affirmative defense, 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 132.05[8](a) (3d ed. 1999), we do not have jurisdiction to address the collateral estoppel effectSSif anySSof Top Branch.