**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30463

ROBERT G. PENDERGRASS,

Plaintiff-Appellee,

VERSUS

THE GREATER NEW ORLEANS EXPRESSWAY COMMISSION,
DAVID HURSTELL, AND JAMES DIGBY,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Louisiana

June 18, 1998

Before BARKSDALE, BENAVIDES, AND DENNIS, Circuit Judges.

Dennis, Circuit Judge:

The plaintiff-appellee, Robert G. Pendergrass, brought this suit for monetary damages under 42 U.S.C. §1983 against the defendants-appellants, the Greater New Orleans Expressway Commission (GNOEC) and its police officer employees, David Hurstell and James Digby, alleging that the officers had violated his Fourth Amendment rights by using excessive force on him during an arrest. The GNOEC and its officers moved for summary judgment and/or a dismissal for lack of subject matter jurisdiction alleging (1) that

the GNOEC was immune from this suit under the Eleventh Amendment because of its status as an agency or arm of the state, and, in the alternative, (2) that the officers involved were not "persons" under §1983. The district court denied the motion. The defendants appealed. We affirm.

## Factual Background

On July 29, 1994, Robert Pendergrass, the plaintiff, was exiting the Causeway Bridge in Metairie, Louisiana, on his way to New Orleans when he was stopped for speeding by two GNOEC police officers, the defendants David Hurstell and James Digby. After the stop, the officers arrested Pendergrass for speeding and driving while intoxicated and handcuffed him. The officers allegedly used excessive and unnecessary force, striking Pendergrass's head, pushing him to the ground and pulling him up with the handcuffs. Pendergrass allegedly sustained severe and disabling injuries requiring two surgical procedures as a result.

## Analysis

The Eleventh Amendment to the United States Constitution provides that:

> *The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects*

*of any Foreign State.*

Adopted in order to override *Chisholm v. Georgia*, 2 Dall. 419, 1 L.Ed. 440 (1793), the Eleventh Amendment confirms the States' role in our federal system as separate sovereigns which may not be sued in the court of another sovereign, i.e. the federal government, or their own courts absent consent or, in certain circumstances, congressional abrogation of sovereign immunity. *See Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 54-56 (1996); *see also Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993)("The [Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity."). In addition to barring suits by citizens of one state against another state in federal court, the Eleventh Amendment also "bars suits in federal court by citizens of a state against their own state or a state agency or department." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986); *Hans v. Louisiana,* 134 U.S. 1 (1890). It is well settled that even though a state is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment if the state is the real, substantial party in interest because the suit seeks to impose a liability which must be paid from public funds in the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945).

Accordingly, we must determine whether the GNOEC is "an arm of the state enjoying eleventh amendment immunity or whether it possesses an identity sufficiently distinct from that of the State of Louisiana to place it beyond that shield." *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986). This court has held that, in deciding whether a named defendant is entitled to Eleventh Amendment immunity as an "arm of the state," "we 'must examine the particular entity in question and its powers and characteristics as created by state law....'" *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744 (5th Cir. 1986)(quoting *Laje v. R.E. Thomason General Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)). The relevant factors include: "(1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of the funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property." *Minton*, 803 F.2d at 131; *see also Delahoussaye v. City of New Iberia,* 937 F.2d 144, 147 (5th Cir. 1991).

Applying the relevant factors, we conclude that the GNOEC is not an arm of the state and, therefore, is not shielded by the state's Eleventh Amendment immunity.

4

*(1) The relevant statutes and case law characterize the GNOEC as a local entity and not an arm of the state.*

The statutes pertaining to the GNOEC characterize it as a local or interparish entity.  The GNOEC was created as a public corporation in 1954 by the parishes of Jefferson and St. Tammany for the purpose of building and operating a toll causeway over Lake Pontchartrain as a direct vehicular transportation link between the two parishes.  The two parishes established the GNOEC as their own instrumentality under the authority of the Local Services Law, La. R.S. 33:1321 et seq., which empowers any combination of parishes to agree to jointly construct, acquire or improve any public project, including causeways, bridges, highway facilities and other means of public transportation. La. R.S. 33:1324.  The GNOEC articles of incorporation provide that it is an agency and instrumentality of the parishes of Jefferson and St. Tammany.  Article VI §22(g)(5) of the 1921 Louisiana Constitution was also added in 1952 to confer the necessary authority on the parishes of Jefferson and St. Tammany to construct, maintain and operate the causeway and issue revenue bonds for that purpose.  However, that constitutional provision specifically states that such bonds shall not be or constitute a debt of the state.  La. Const. of 1921, art. VI, §22(g).

Subsequently, the legislature enacted laws imposing financial and budgetary regulations upon the GNOEC.  Act 762 of 1986, §12,

5

requires the GNOEC to comply with the Louisiana Local Government Budget Act which governs the budgetary procedures of local government entities. Act 875 of 1988 requires the GNOEC to comply with the Louisiana Administrative Procedures Act with respect to contracts and bonds and to submit its proposed annual budget to the joint legislative budget committee for review and approval. 1988 La. Acts 875 §2(B) & (C). This legislation, however, did not alter the essential powers or characteristics of the GNOEC in any respect. In fact, Act 762 of 1986 expressly recognized and reaffirmed that the GNOEC is the same commission that was "*created by the parishes as an agency and instrumentality of the parishes*, pursuant to articles of incorporation dated October 20, 1954." 1986 La. Acts 762 §1(2)(emphasis added).

In addition, Louisiana courts have characterized the GNOEC as a local or interparish entity rather than as an arm of the state. *See Greater New Orleans Expressway Comm'n v. Board of Tax Appeals,* 681 So.2d 957, 959-60 (La. Ct. App. 5th Cir. 1996)(holding that the GNOEC was not a state agency or commission which would be exempt from state sales and use taxes); *Parish of Jefferson v. Roemer,* 539 So.2d 97, 100 (La. Ct. App. 5th Cir. 1989)(describing the GNOEC as an "interparish entity" created under the provisions of La. R.S. 33:1324); *see also Schultz v. Greater New Orleans Expressway Comm'n,* 250 F.Supp. 89, 91-92 (E.D. La. 1966)(holding that the GNOEC was a distinct political corporation created by the parishes

6

of Jefferson and St. Tammany and, therefore, not entitled to Eleventh Amendment immunity).

In sum, Louisiana laws and court decisions characterize the GNOEC as a local, interparish entity and not as an arm of the state.

*(2) The source of funds for the GNOEC.*

An important goal of the Eleventh Amendment is the protection of state treasuries. *Delahoussaye,* 937 F.2d at 148-49. Therefore, whether "the action is in essence one for the recovery of money from the state," is a most significant test in determining whether "the state is the real party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co.,* 323 U.S. at 464; *see Edelman*, 415 U.S. at 663("Thus the rule has evolved that a suit by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 560 (5th Cir. 1982).

The GNOEC finances its operation and maintenance of the Lake Pontchartrain Causeway with self-generated income, viz., toll revenue and bond investment income. Bonds issued by the GNOEC, which generate construction and investment revenues, do not constitute debts of the state and are not backed by the full faith

7

and credit of the state.  La. Const. of 1921, art. VI, §22(g); *Cf.*

*Jacintoport Corp. v. Greater Baton Rouge Port Comm'n,* 762 F.2d 435,

439 (5th Cir. 1985)(noting that a state's guarantee of bonds issued

by an entity can be evidence, however slight, of state agency

status).  The GNOEC finances its bond debt service with its bond

investment revenue and with money allocated from State Highway Fund

No. 2.

The only money the GNOEC receives from the state comes from

State Highway Fund No. 2., which was created in 1952 as part of the

enabling legislation which led to the creation of the GNOEC.  *See*

La. Const. of 1921, art. VI, §22(g).  The fund consists of

vehicular license taxes collected from a six parish area

surrounding Lake Pontchartrain.[1]  *See Roemer,* 539 So.2d at

99(discussing the creation of Fund No.2).  A portion of this fund

is allocated to the GNOEC every year in order to finance debt

service on the bonds previously issued.  However, Fund No.2 monies

may not be used to finance the operation and maintenance of the

causeway.  In sum, the GNOEC receives no operating revenue from the

state; the funds transferred to it by the state are derived from

the six parish region served by the causeway and are dedicated

solely to debt service on GNOEC bonds.

The GNOEC treats liabilities resulting from monetary damage

---

[1]The six parishes are as follows: Orleans, Jefferson, St. John
the Baptist, St. Charles, Tangipahoa, and St. Tammany.

judgments as an operating expense and pays or insures against them on its own. In order to defray such expenses, the GNOEC procures liability insurance policy coverages and maintains a "Self Insurance Retention Fund" for excess coverage. According to the testimony of GNOEC's CPA, it has never had to pay a judgment which was not adequately covered by its insurance or the Self Insurance Retention Fund. Moreover, the general manager of the GNOEC testified that the state of Louisiana has never paid a judgment or claim on behalf of the GNOEC. Therefore, on the record before us, it appears that any judgment obtained by Pendergrass can be satisfied by the GNOEC itself rather than by the state treasury.

Nevertheless, the defendants contend that the GNOEC should be considered an arm of the state because judgments against it may indirectly affect the size of the GNOEC's surplus which it is required by the 1988 Act to turn over to the state at the end of each fiscal year. *See* 1988 La. Acts 875 §4. This not a sufficient reason to consider the GNOEC an alter ego of the state. Historically, judgments against the GNOEC have been paid without any state assistance from its own insurance policies or self insurance fund that it maintains by regular payments as current operating expenses. The 1988 Act provides that the GNOEC shall pay all of its maintenance and operating expenses before any of its funds become surplus that it is obliged to turn over to the state. Under these circumstances, a judgment in favor of Pendergrass

against the GNOEC will not be paid with public funds from the state treasury. Any influence upon the state treasury by such a judgment would be too indirect and remote to characterize it as a potential liability of the state treasury or to make the state the real, substantial party in interest.

In summary, the GNOEC is a self-supporting entity which finances its own operational costs through tolls and investments. It receives money from the state for the limited purpose of servicing bonded debt. The GNOEC's bonds are not backed by the full faith and credit of the state and, thus, do not constitute a debt owed by the state. Any judgment rendered in this case would not be paid out of the state treasury but by the GNOEC through either its insurers or its self insurance fund. Accordingly, this factor weighs heavily against classifying the GNOEC as an arm of the state or permitting it to invoke Eleventh Amendment immunity. *Cf. Jacintoport Corp.,* 762 F.2d at 440-42.

### (3) The degree of local autonomy the entity enjoys.

The third factor we look to focuses on the degree of local autonomy the entity at issue enjoys. "Local autonomy is not only a measure of the closeness of the connections between the entity and the State, it is also the mechanism through which the Eleventh Amendment 'assure[s] that the federal courts do not interfere with a state's public policy and its administration of internal public

10

affairs.'" *Jacintoport Corp.,* 762 F.2d at 442 (quoting *Blake v. Kline,* 612 F.2d 718, 725 (3rd Cir. 1979), *cert. denied,* 447 U.S. 921 (1980)).

The Greater New Orleans Expressway Commission itself is composed of five members who are charged with the construction, operation, and maintenance of the Greater New Orleans Expressway, which is commonly called the "causeway." Three of the GNOEC's commissioners are appointed by the governor, subject to conditions, as follows: (1) a member from Jefferson Parish, recommended by the Jefferson Parish Legislative Delegation, for a two year term, (2) a member from St. Tammany Parish, upon the recommendation of the St. Tammany Parish Legislative Delegation, for a two year term, and (3) a member for a one year term alternately from Jefferson Parish and St. Tammany Parish, recommended by the applicable legislative delegation. 1988 La. Acts. 875 §11. All of the governor's appointments are subject to confirmation by the state senate. *Id.* Two members are appointed by the parish governing bodies as follows: one is appointed for a two year term by the Jefferson Parish Council and the other for a two year term by the St. Tammany Parish Police Jury. *Id.*

The defendants assert that because the governor appoints a majority of the GNOEC, it enjoys very little local autonomy. The governor's appointment power is not plenary, however. The governor is authorized to make appointments only upon the recommendation of

11

the local legislative delegations and subject to senate approval. Furthermore, the three members appointed by the governor serve for a specified term and not at his or her pleasure. *Contrast Jacintoport,* 762 F.2d at 442("It is true that the vulnerability of the commissioners to the governor's pleasure militates against a finding of local autonomy."). Finally, the other two members of the GNOEC are appointed by the local governing bodies and are thus indirectly responsible to the local electorate. *See McDonald v. Board of Mississippi Levee Comm'rs,* 832 F.2d 901, 907 (5th Cir. 1987)(finding that the fact that the Levee Board was locally elected evidenced autonomy).

In this case, the governor's role in the appointment process does not prevent the GNOEC from having a high degree of local autonomy because the parish appointments, fixed terms of appointments, local legislative delegation nomination, and senate approval tug strongly in that direction.


*(4) Whether the entity is concerned with primarily local, as opposed to state-wide problems.*

The district court found the business of the GNOEC to be primarily a local concern. The defendants counter that because the heavily traveled expressway is considered part of the state highway system, the work of the GNOEC is of state-wide concern. *See* 1986 La. Acts. 762 §9(1)(designating the expressway as part of the state

12

highway system).

The relevant test, enunciated by this court in the *Jacintoport Corp.* case, is whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants. *Jacintoport,* 762 F.2d at 443. Originally, the causeway project was undertaken by the parishes of Jefferson and St. Tammany to encourage the development of each parish. To that end, the GNOEC has been a success and clearly works for the benefit and welfare of the inhabitants of St. Tammany and Jefferson, along with those residents of near-by parishes who occasionally make use of the bridge. While the causeway is certainly an important part of the state highway system, it predominantly benefits the commuters who live in St. Tammany and work or shop in Jefferson or Orleans Parishes, as well as their south shore employers and suppliers of goods and services. The concern of the GNOEC is solely the causeway, a bridge connecting and serving principally three parishes, and is thus primarily local. *Cf. Id.*(holding that Greater Baton Rouge Port Commission dealt with matters of local concern).

*(5) & (6) Whether the entity has authority to sue and be sued in its own name; and Whether the entity has the right to hold and use property?*

The GNOEC's power to sue and be sued tends to favor a finding

13

that it is not an arm of the state.

In addition, the GNOEC has the right to hold and use property. This factor points toward a finding that the GNOEC is not an arm of the state. The fact that at some time in the distant future, after the GNOEC's bonds are paid and the tolls dispensed with, the GNOEC's property may revert to the state, does not change the present state of affairs under which the GNOEC owns, operates, and maintains the causeway system with a high degree of autonomy.

In the alternative, the defendants assert that Officers Hurstell and Digby are not "persons" within the meaning of 42 U.S.C. §1983 because they should be considered "state" police officers at the time of the plaintiff's arrest, regardless of the status of the GNOEC. The district court rejected this argument and we agree. In this case, the district court correctly construed the plaintiff's complaint as evidencing an intent to sue the two officers in their individual capacities. Thus, even if the GNOEC were a state agency, which it is not, then this suit could still proceed against these putative state officials in their individual capacities because, in such a capacity, they are "persons" within the meaning of §1983. *Hafer v. Melo,* 502 U.S. 21, 31 (1991).

## Conclusion

Upon considering all relevant factors, we conclude that the

14

GNOEC is not an arm of the state of Louisiana and therefore may not invoke Eleventh Amendment immunity.  For essentially the same reasons ably assigned by the district court, its decisions to deny GNOEC's motion for summary judgment and/or dismissal for lack of subject matter jurisdiction is AFFIRMED and the case is REMANDED for further proceedings.