**DUNHILL RESOURCES I, L.L.C.**

v.

**State of LOUISIANA, ex rel. the LOUISIANA STATE MINERAL BOARD**

**No. CIV.A. 02–749–D.**

United States District Court,
M.D. Louisiana.

June 30, 2003.

John Y. Pearce, Justin Hariss Homes, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, for plaintiff.

Isaac Jackson, Jr., Attorney General's Office, Baton Rouge, LA, for defendants.

## RULING ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

BRADY, District Judge.

This matter is before the Court on a motion to dismiss the plaintiff's complaint (doc. 7), dated January 17, 2003, filed by the defendants, the State of Louisiana and the State Mineral Board (the "Mineral Board"). The plaintiff, Dunhill Resources ("Dunhill") has filed an opposition. The Mineral Board has filed a reply. Oral arguments were held on April 10, 2003 and the matter was submitted following the receipt of memorandums from both sides. Subject matter jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

Dunhill alleges that it is a Texas Corporation, authorized to do and doing business in Louisiana, with its principal place of business in the State of Texas. On or about March 20, 2002, the Mineral Board advertised a certain property referred to as Tract No. 34394 to the public for purposes of soliciting bids for the award of an oil, gas and mineral lease from the State of Louisiana. Dunhill and others submitted bids by virtue of and in conformity with applicable provisions of La. R.S. 30:121, *et seq.* Accordingly, all bids submitted to the Mineral Board were sealed and opened at a public meeting held in its office in Baton Rouge, Louisiana on May 8, 2002.

As to Tract No. 34394, after considering several factors, the Mineral Board rejected Dunhill's bid as inferior to bids submitted by others and announced its intention at that May 8, 2002 public meeting to grant leases to those who submitted what it deemed the most advantageous bids to the State. However, after the adjournment of the May 8, 2002 meeting, Dunhill protested the Mineral Board's alleged failure to consider its "additional consideration." In response, a stay of the administrative processing of the leases was permitted. At the next regular meeting of the Mineral Board, on June 12, 2002, the Board's Legal and Title Controversy Committee heard from all interested parties, listened to presentations made by Dunhill and others, reviewed all bids in their entirety, and nevertheless affirmed the original acceptance of the bids as made in May as being the most advantageous to the State.

Dunhill now contends that its "additional consideration" offered with its bid was never identified, read to the public, nor noted by the Mineral Board or its staff. Dunhill further contends that, in the absence of consideration by the Board of all terms and conditions of all bids, it was impossible for the Mineral Board to determine which bid was most advantageous to the State pursuant to La. R.S. 30:126 and 127; and thus the Mineral Board accepted bids based on a lack of complete information, error and mistake. Dunhill ultimately contends that because the issuance of the lease was in violation of the public bidding laws and Louisiana's State Constitution,[1] defendant's rejection of its bid and acceptance of another's bid constituted a deprivation of Dunhill's rights under the due process and equal protection clauses of the State and Federal Constitutions.

At oral argument, the Court granted the motion by the State of Louisiana and reserved ruling on the motion made by the Mineral Board. Consequently, the Court considers only the motion as it pertains to the Mineral Board herein.

■ It is well established that Eleventh Amendment immunity extends to arms of the State when "the State is the real, substantial party in interest."[2] As such, a State or an arm of the State is immune from suit pursuant to the Eleventh Amendment unless it waives its immunity or there has been a congressional abroga-tion of the State's immunity,[3] neither of which have occurred here.

The Mineral Board argues that it is an arm of the State created pursuant to La. R.S. 30:121. As an administrative board or agency, it only has the power and authority expressly granted by the constitution or statutes.[4] The legislature authorized the Mineral Board to carry on operations to explore State lands in its own name and for the account of the State.[5]

The Mineral Board argues that, because it is characterized by the legislature as an arm of the State, a suit against the Mineral Board is, in effect, a suit against the State.[6] Consequently, the Mineral Board is not amenable to suit in federal court.[7] The legislature, by virtue of Act 93 of 1936, now La. R.S. 30:121, created the State Mineral Board as a body corporate with the usual powers incident to corporations, including those of suing and being sued.[8] It has vested the Mineral Board with full authority to lease State lands, for mineral development and production.[9] The Mineral Board, by virtue of the statute, has been the designated agent of the State to supervise and handle that portion of its affairs which deals with the development of its lands for mineral purposes, and to this end the agent is permitted the right, concurrently with the principal, the State of Louisiana, to institute and defend against ac-

---

1. *La. Const. Art. IX § 5.*

2. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) *citing Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

3. *Id.* at 907.

4. *La. Atty. Gen. Op.* No. 99–130.

5. La. R.S. 30:121 (West 1989).

6. *Louisiana Land and Exploration Co. v. State Mineral Board,* 229 F.2d 5, 8 (5th Cir.1956). Case hereafter referred to as *"LL & E."*

7. *La. Const. Art. XII § 10; Tardan v. Chevron Oil,* 463 F.2d 651 (5th Cir.1972).

8. *State v. Texas Co.,* 205 La. 417, 17 So.2d 569 (La.1944).

9. *Id.* at 426, 17 So.2d 569.

tions.[10]

The United States Fifth Circuit has set forth several factors to be used in determining whether an entity is an arm of the State for Eleventh Amendment immunity purposes. Those factors include: (1) whether the State statutes and case law characterize the agency as an arm of the State; (2) the source of the funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to State-wide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.[11] A defendant need not possess each of the above attributes to benefit from the Eleventh Amendment.[12] Nor are these factors necessarily equal to one another.[13] Indeed, it is well established that the second factor is the most important-the fundamental goal being to protect State treasuries.[14] In this regard, the Court considers the State's liability for any judgment and the State's liability for general debts and obligations. The last two factors (the right to sue and be sued and to hold and use property) "weigh significantly less" in the balance of things.[15]

### (1) Whether the State Statutes and Case Law Characterize the Agency as an Arm of the State

The Mineral Board first argues that State statutes and case law character-ize the agency as an arm of the State. The Mineral Board points to *Tardan v. Chevron Oil,* in which the Fifth Circuit stated that the fact that the legislature chose to call the Mineral Board a corporation does not alter the Board's characteristics so as to make it something other than what it actually is, a mere agent of the State.[16] The Mineral Board further argues that in examining State Court decisions on the Mineral Board, questions regarding the separate nature of the Mineral Board are generally subservient to and subsumed by questions regarding the suability *per se* of the Board. State Courts have not needed to distinguish between the Board's being a separate entity from the State and the Board's being an arm of the State. In both situations, suits are permissible in the Louisiana Courts.[17] Therefore, when the Mineral Board sues or is sued, it appears in court as an agent of its principal, the State of Louisiana.

Dunhill argues that the Louisiana legislature has not characterized the Mineral Board as an "arm of the State" in any statute.[18] Dunhill further argues that the United States Fifth Circuit also did not recognize any such legislative pronouncements in its decision in *LL & E, supra.* Likewise, identifying an entity as a "creature of State law" does not necessarily mean that it is an "arm of the State" for purposes of Eleventh Amendment juris-

---

10. *Id.*

11. *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 147 (5th Cir.1991) *citing Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 131 (5th Cir.1986) *citing Clark v. Tarrant County Texas,* 798 F.2d 736, 744 (5th Cir. 1986).

12. *Delahoussaye,* 937 F.2d at 147–48.

13. *Id.*

14. *Cozzo v. Tangipahoa Parish Council–President Government,* 279 F.3d 273, 281(5th Cir. 2002).

15. *Id.*

16. 463 F.2d 651, 652 (5th Cir.1972).

17. *Id.*

18. See the Mineral Board's Memorandum (doc. 8), p. 4.

prudence.[19] Rather than requiring a complete separation from the State as *LL & E* and the Mineral Board suggest, Dunhill claims the Fifth Circuit more recently explained in *Pendergrass v. Greater New Orleans Expressway Commission*, that the Eleventh Amendment will not bar a suit if the entity possesses an identity "sufficiently distinct" from that of the State.[20]

Dunhill argues that Louisiana jurisprudence suggests that the Mineral Board is "sufficiently distinct" from the State.[21] Dunhill claims the decisions in *Daigle and Walmsley* demonstrate that Louisiana's own Courts recognize a significant and substantial distinction between the Mineral Board and the State, and Dunhill suggests that distinction permits suit against the Mineral Board despite the Eleventh Amendment.[22]

In its reply, dated February 28, 2003, the Mineral Board correctly notes that in *Daigle,* the Court observed that a suit against the Mineral Board seeking the cancellation of a mineral lease granted by the Board was not an action against the State without its consent, and that such action against the State could not serve to defeat the action, even though title claimed for the State might be determined as an incident to the right of cancellation.[23] However, the Court went on further to state that this principle would not apply to an action wherein the sole purpose was the "determination of title" in which the cancellation of a mineral lease would play no part.[24]

In fact, in *Tardan,* the Fifth Circuit articulated that it "is unwilling to accept the notion that the State Mineral Board is a separate body from the State in the absence of more emphatic pronouncements in this area." [25] Furthermore, the Mineral Board argues that Dunhill's assertion that the Board's reliance on *Tardan* and *LL & E supra* is perhaps wrong, outdated, or an inaccurate reflection of current law constitutes a disregard for statutory and judicial precedence.[26] Nevertheless, Dunhill goes on to cite *Pendergrass* to incorrectly suggest that the law has changed, in that the Fifth Circuit has found entities much like the Mineral Board to have identities "sufficiently distinct" from that of the State, so as to deny Eleventh Amendment.

Dunhill's reliance on *Pendergrass* is in error and clearly distinguishable from the case at hand. Specifically, in *Pendergrass,* the Greater New Orleans Expressway Commission ("GNOEC") was character-

---

**19.** *See for example, Southwestern Bell Telephone Co. v. City of El Paso,* 243 F.3d 936, 939 (5th Cir.2001).

**20.** 144 F.3d 342, 344 (5th Cir.1998).

**21.** *See Daigle v. Pan American Production Co.,* 236 La. 578, 108 So.2d 516 (1959) (holding that an action seeking cancellation of a mineral lease brought against the Mineral Board was not an action against the State) and *Walmsley v. Pan American Petroleum Corp.,* 244 La. 513, 153 So.2d 375 (1963) (holding that the State was not indispensable to an action against the Mineral Board for the removal of cloud on a title).

**22.** Dunhill admits that the cases did not persuade the Court in *Tardan, supra,* consumed, as it was, with the notion that an entity must be "wholly separate" from the State in order for the Mineral Board to lose Eleventh Amendment immunity. However, as mentioned previously, Dunhill argues that the *Tardan* Court's analysis is not in line with current law as the law is now explained in *Pendergrass, supra.*

**23.** 236 La. at 588, 108 So.2d 516.

**24.** *Id.*

**25.** 463 F.2d at 653.

**26.** See Dunhill's Memorandum in Opposition (doc. 9), p. 1.

ized as a "local or interparish" instrumentality created for the purpose of serving two local connecting parishes.[27] Because the GNOEC benefits were local in nature, it was correctly declared a "separate and distinct" entity from that of the State, unlike the State Mineral Board.[28]

Thus, considering the aforementioned cases, the Court concludes that the majority view in the jurisprudence is that the Mineral Board is an arm of the State and this factor weighs in favor of finding immunity.

### (2) The Source of Funds for the Entity

As to the source of the funds for the entity element of the six part test, both plaintiff and defendant agree that there are two characteristics of this factor that are assessed to determine whether an entity qualifies as an arm of the State. The first is whether the entity receives funding from the State, and the second is whether the State is responsible for money damages assessed against the entity.[29] The Mineral Board notes that the Fifth Circuit has stated that, "because an important goal of the Eleventh Amendment is the protection of State treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with State funds".[30] Any mon-

ey judgments rendered against the State or one of its agencies are payable from funds appropriated by the Louisiana Legislature.[31] As a result of this constitutional provision, the Mineral Board argues that any judgment rendered against the State Mineral Board will be paid by the State.

Dunhill notes that the Mineral Board is authorized to collect fees independently and for its own account.[32] Thus, Dunhill argues that the Mineral Board receives its funding, not only from the State treasury, but also by the fruits of its own labor.

Following the April 10, 2003 oral argument on Defendants' motion to dismiss, the Court, by order, allowed additional briefs to provide further illumination regarding the source of funding factor from the *Richardson*[33] list of factors to be considered in determining whether in this case a suit against the State Mineral Board is, in effect, a suit against the State.[34]

In its supplemental memorandum, Dunhill argues that in the affidavits and material attached to the Mineral Board's supplemental memorandum, not a single instance of State funding of the Mineral Board is identified. Dunhill says that the material instead involves the funding of the Office of Mineral Resources ("OMR") and not the Mineral Board.[35] Moreover,

---

**27.** 144 F.3d at 344.

**28.** *Id* at 345.

**29.** *Richardson v. Southern University*, 118 F.3d 450 (5th Cir.1997).

**30.** *Delahoussaye, citing McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir.1987).

**31.** *La. Const. Art. XII, § 10(C)*.

**32.** *See, for example,* La. R.S. 30:129, 130 and 142(A).

**33.** 118 F.3d at 450.

**34.** Dunhill admits that the Eleventh Amendment prohibits this suit insofar as it is directed against the State of Louisiana (Dunhill's Memorandum at p. 1).

**35.** In the affidavit of Robert D. Harper, he states, "that I am familiar *with the amount and method of funding of the Office of Mineral Resources,* which is the staff of the State Mineral Board." [emphasis supplied]. In the affidavit of Gus C. Rodemacher, he states, "That I am also Secretary to the State Mineral Board, and am familiar *with the amount and method of funding of the Office of Mineral*

Dunhill contends that the statutes which establish OMR and the Mineral Board demonstrate that they are different and distinct entities. Thus, that funding received by OMR does not constitute funding of the Mineral Board. Dunhill bases this argument on the fact that the Mineral Board is established as a body corporate with the power to sue and be sued.[36] It is also charged with administering the State's proprietary interest in minerals [37] and it is given exclusive authority to lease public lands for development and production of minerals.[38] Furthermore, it has full and independent supervision of those mineral leases.[39]

OMR, however, is separately created under authority of La. R.S. 36:358. Dunhill argues that, pursuant to La. R.S. 30:135, the Department of Natural Resources, another entity separate and distinct from the Mineral Board, is directed to provide staff functions through the OMR to assist the Mineral Board and in the Mineral Board's leasing, supervisory, and other activities. Dunhill argues that OMR is not a substitute for the Mineral Board and is not responsible for the satisfaction of judgments against the Mineral Board.

For the second characteristic of the "source of funding" test, Dunhill reiterates that no money judgment is sought here against the Mineral Board so the State would not be liable for a money judgment obtained in this suit against the Mineral Board.

Regardless, the Fifth Circuit, in *Vogt v. Board of Commissioners of the Orleans Levee District*, held that the State's authority to voluntarily pay money judgments on behalf of an entity, when not otherwise required to pay such money judgments, cannot satisfy the "source of funding" factor for Eleventh Amendment immunity.[40] Dunhill states that the Fifth Circuit's decision in *Vogt* is controlling here. Thus, Dunhill argues that the State's decision to satisfy any money judgment obtained against the Mineral Board would be completely voluntary and after-the-fact; therefore, the Mineral Board's judgment debts are not a liability of the State treasury.

In its supplemental memorandum, the Mineral Board argues that the State is the source of direct funding and that any judgment rendered against the Mineral Board will be paid by the State. To support these claims, the Mineral Board points to the affidavit of Mr. Robert D. Harper, in which he explains the funding of the OMR, which is by statute the staff of the Mineral Board.[41] In his affidavit, Mr. Harper explains that the Mineral Resources Management Program is funded [42] with a combination of State general funds, fees and self-generated revenues, statutory dedications, and federal funds, and that the Direct State general fund dollars for Fiscal Year 2001–2002 totaled $2,515,790.[43] Furthermore, the Mineral Board points out that all funds collected as fees, self-generated revenues or statutory dedications are remitted to the State treasury, and the

---

*Resources ...*" [emphasis supplied]. In addition to the affidavits, Exhibit B to the Mineral Board Supplemental Memorandum sets forth budget item 04–434 which explicitly discusses OMR and does not directly address the Mineral Board.

**36.** La. R.S. 30:121(C).

**37.** *Id.* at D.

**38.** La. R.S. 30:124 (West 1989).

**39.** La. R.S. 30:129 (West 1989).

**40.** 294 F.3d 684, 693–94 (5th Cir.2002).

**41.** Exhibit "A."

**42.** Per La. R.S. 30:136.3.

**43.** Exhibit "A."

Mineral Board maintains no independent or separate accounts.[44]

As to the second part of the funding inquiry, the Mineral Board notes that the Fifth Circuit has stated that "because an important goal of the Eleventh Amendment is the protection of State treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with State funds." [45]

During oral argument, counsel for Dunhill claimed that with this suit no actual money damages are being sought and therefore the concerns embodied in this prong of the analysis are minimized. However, Dunhill seeks costs of these proceedings and also seeks to have the Court decree State Lease No. 17433 "null, void and of no effect." [46] The Mineral Board argues that, should State Lease No. 17433 be declared null and void, it is obvious that the lessee would have to be refunded the bonus it paid for said Lease. It is also clear that the State would be the source of that refund, inasmuch as the Mineral Board has no independent or separate account apart from the State of Louisiana. Because the record indicates that Dunhill seeks to annul a lease covering 490.97 acres (which included all of Dunhill's plus some of EPL's bid) at $718/acre and 22% royalty,[47] the Court finds that this is, in effect, a suit for money damages. Furthermore, it is beyond question that the financial impact of such a judgment will be borne by the State.

## (3) The Degree of Local Autonomy the Entity Enjoys

The third factor of the six part test is the degree of local autonomy the entity (Mineral Board) enjoys. The Mineral Board persuasively argues that little, if any, of its control and management functions relate in any way to local autonomy. The Mineral Board is a State agency created pursuant to Act 93 of 1936, now La. R.S. 30:121. It is composed of the Governor and Secretary of the Department of Natural Resources, ex officio, and nine members appointed by the Governor.[48] The Board is characterized as a body corporate with the power to sue and be sued, is authorized to administer the State's proprietary interest in minerals, and is granted additional power incident to corporations.[49] The members are under the control and supervision of the Governor and serve at the pleasure of the Governor. The Mineral Board correctly points out that these factors do not involve or pertain to local autonomy.

Dunhill cites the Court in *Vogt* that "the determination of an agency's autonomy requires analysis of the 'extent of the [entity's] independent management authority'...[as well as] the independence of the individual commissioners" who govern the entity.[50] Dunhill points out that the Mineral Board does not dispute the conclusion that it has exclusive "management authority" over the mineral leases it awards and administers. Among other examples of management authority, the Mineral Board

44. *See also*, Affidavit of Mr. Gus C. Rodemacher, Exhibit "C."

45. *Delahoussaye*, 937 F.2d at 147–48.

46. Dunhill's Complaint at p. 9.

47. See Affidavit of Mr. Frederick D. Heck, annexed hereto as Exhibit "D," as well as Mr. Heck's May 22, 2002 letter (previously sup-

plied as an exhibit to Dunhill's Complaint in this matter), Exhibit "E."

48. La. R.S. 30:121 (West 1989).

49. *Id.*

50. 294 F.3d at 694 quoting *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 442 (5th Cir.1985).

has full supervision of all mineral leases granted by the State.[51] Moreover, no branch of State government exercises supervisory control over the day-to-day operations of the Mineral Board. Dunhill notes that, notwithstanding the fact that the Governor's power to appoint is not without limitation,[52] the United States Fifth Circuit, in *Jacintoport, supra,* explained that the appointment process is given less weight than the scope of the entity's authority over its day-to-day activities.

Dunhill claims the situation in this case is similar to that in *Vogt,* in which the Fifth Circuit recently dealt with claims by landowners against the Orleans Levee District for an alleged unconstitutional taking of property. Confronting the issue of "management authority," the Court noted that, as Dunhill alleges is the case here, the levee district was granted by statute full and exclusive right, jurisdiction, power and authority over all levee-related matters within its territorial reach, with no oversight from the executive branch of government over the day to day operations of the levee district. The Fifth Circuit in *Vogt* rejected Eleventh Amendment immunity, notwithstanding the fact that six of the eight commissioners on the levee board served at the governor's pleasure. Dunhill argues a similar conclusion is warranted here.

In its reply, the Mineral Board notes Dunhill's reliance on *Vogt* and the suggestion that the Court should classify the Board as a "political subdivision" rather than as a State "agency" or "arm of the

State."[53] The Louisiana Revised Statutes provide a distinction between "agencies" and "political subdivisions."

Pursuant to *Section 5102 of Title 13 of the Louisiana Revised Statutes,* a "State agency" is:

> (A) ...any board, commission, department, agency, special district, authority, or other entity of the state and, as used in R.S. 13:5106,.... "State agency" does not include any political subdivision or any agency of a political subdivision.

> (B) .... "political subdivision" means any parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or subdivision of any of these, and other public or government body of any kind which is not a state agency.

As such, the Mineral Board as a State "agency" by definition should warrant immunity from suit in federal court.

The United States Court of Appeals for the Fifth Circuit has found similar agencies within the executive branch of State government to be immune from suit. In *Voisin's Oyster House, Inc. v. Guidry,* the plaintiff brought a 42 U.S.C. § 1983 action against the Louisiana Department of Wildlife and Fisheries Commission.[54] The Court found that the Department, as part of the executive branch of State government under Title 36 of the Louisiana Revised Statutes, and the Commission, as part of the Department, were part of the State and therefore immune from suit.[55] In *Darlak v. Bobear,* the Court found that

---

**51.** La. R.S. 30:129.

**52.** The Governor's appointments are subject to Senate confirmation and reconfirmation every two years, see La. R.S. 30:121.

**53.** In *Vogt,* 294 F.3d at 692, the Court explains that the levee districts are separate

"political subdivisions" and not part of the executive branch of government.

**54.** 799 F.2d 183, 186 (5th Cir.1986).

**55.** *Id.*

the Department of Health and Human Resources (DHHR), as part of the executive branch of State government, and Charity Hospital, as part of the DHHR, were entitled to Eleventh Amendment immunity.[56] Also, in *Neuwirth v. Louisiana State Board of Dentistry*, the Court found that the Louisiana State Board of Dentistry, as part of DHHR, was immune from suit.[57]

Thus, the Mineral Board persuasively argues that, as an executive department, the State Mineral Board is an arm of the State like the Department of Wildlife and Fisheries and the DHHR, and as such, is entitled to Eleventh Amendment immunity.

### (4) Extent of Local Versus Statewide Concerns

The Mineral Board points out that Louisiana law provides that the Board is to have full supervision of all mineral leases granted by the State in order to determine whether the terms of the leases are fully complied with.[58] The functions of the Mineral Board are contained in La. R.S. 30:121–144 and include, but are not limited to, the procedures for advertising State lands, the application for leases, the bidding terms, and the transferral of solid mineral leases. The Mineral Board is authorized to take all appropriate actions to assure that undeveloped or non-producing State lands and water bottoms are reasonably and prudently explored, developed, and produced for public good. As such, the board has authority to enter into agreements and amend leases in whatever manner that benefits the State of Louisiana. Again, the Mineral Board points out this is clearly not primarily a local concern.

Dunhill notes, however, that the Mineral Board does not exclusively administer State owned minerals. To the contrary, Dunhill argues this independent authority may lease lands of levee districts, drainage districts, road districts, school districts, school boards and other boards, etc.[59] Dunhill claims these entities are clearly local-not Statewide-concerns.

In its reply, the Mineral Board acknowledges that it may lease for other agencies, school boards, and institutions. However, when doing so, it is on behalf of the agency, and the bonus money belongs to the agency, not the State or the Mineral Board. Also, after such a lease is executed, all rights and authority in the lease vest in the agency as if the agency itself had leased the land.[60] More importantly, as the Mineral Board points out, the lease which Dunhill seeks to have declared null and void is not an agency lease but a State lease. Consequently, the Court finds that the local versus Statewide concern factor does not benefit the plaintiff in this case.

### (5) Authority to Sue and Be Sued; and

### (6) the Right to Hold and Use Property

Pursuant to La. R.S. 30:121, the Mineral Board has the power to sue and be sued in its own name, and to hold and use property. The Mineral Board is given the power of a corporate body that has the power to administer the State's proprietary interest in minerals. It has full supervision of all mineral leases granted by the State and it has the power to take any action for the protection of the interests of the State. The Mineral Board also has the power to take all appropriate action, including the

**56.** 814 F.2d 1055, 1060 (5th Cir.1987).

**57.** 845 F.2d 553 (5th Cir.1988).

**58.** La. R.S. 30:129(A).

**59.** La. R.S. 30:151, *et seq.*

**60.** La. R.S. 30:153.

recovery of non-producing leased acreage whenever possible, to assure that undeveloped or non-producing State lands and water bottoms are reasonably and prudently explored, developed, and produced for the public good.[61] The Mineral Board further argues that since State law establishes that the Board is part of the executive branch of the State government, these two factors alone suggest that the Board is an arm of the State.

Dunhill argues that the Mineral Board acknowledges it has the power to sue and be sued in its own name and to hold property pursuant to La. R.S. 30:121, yet the Board refuses to admit that these two factors clearly militate against Eleventh Amendment immunity. While the Court agrees with Dunhill on this point, it has been established that factors four and five of the six-part test "weigh significantly less" in the balance of equities used to determine "whether the suit is in reality a suit against the state itself".[62]

### Conclusion

Applying the above factors in determining whether an entity is an arm of the State, the Court finds that factors one through four point in favor of finding immunity. As to factors five and six, both parties agree that the Mineral Board can sue and be sued and can hold and use property, citing La. R.S. 30:121(c). Though these last two factors cut against Eleventh Amendment immunity, they are relatively unimportant in the balance.

There is an additional argument that Dunhill seeks prospective relief, and therefore, that the claims against the Mineral Board fall within the exception to immunity under *Ex Parte Young*.[63] The Supreme Court, for nearly a century, has permitted suits against State officials, in their individual capacities, for prospective injunctive relief to end a continuing violation of federal law under this doctrine.[64] The Mineral Board points out that the instant suit names absolutely no individual defendants. However, Dunhill also correctly notes that the Fifth Circuit, in *Louisiana State Board of Education v. Baker*, held that "the Eleventh Amendment provides no haven for a state agency when it violates federally protected constitutional rights." [65]

Dunhill's argument that the instant suit for declaratory relief seeks prospective relief lacks merit. Dunhill seeks invalidation or avoidance of the lease award *ab initio* as being constitutionally infirm (and thus also avoiding its future impact). Alternatively, Dunhill requests immediate cancellation. It is clear that this is an action based upon an alleged past violation of due process and equal protection in connection with the public bidding laws. Thus, the exception for seeking prospective relief is not applicable in this case.

Accordingly, the motion to dismiss (doc. 7) pursuant to Eleventh Amendment immunity filed by the defendants, the State of Louisiana and the Louisiana State Mineral Board, is hereby GRANTED and this action shall be dismissed.

---

61. La. R.S. 30:129(A).

62. *Cozzo,* 279 F.3d at 281.

63. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

64. *Id.*

65. 339 F.2d 911(5th Cir.1964).