Dear Representative Schroder:
Amid recent reports of a possible sale or lease of the Lake Pontchartrain Causeway (hereinafter the "Causeway"), you seek an opinion of this office regarding what entity, if any, currently has the authority to sell or lease the bridge to a private entity. You also question what steps would have to be taken before an agreement for sale or lease to a private entity could be executed and whether the arrangement would be subject to the approval of the legislature, the Department of Transportation and Development, or the voters.
The Causeway is owned and operated by the Greater New Orleans Expressway Commission (GNOEC). As explained by the Fifth Circuit United States Court of Appeals, "The GNOEC was created as a public corporation in 1954 by the parishes of Jefferson and St. Tammany for the purpose of building and operating a toll causeway over Lake Pontchartrain as a direct vehicular transportation link between the two parishes. The two parishes established the GNOEC as their own instrumentality under the authority of the Local Services Law, La.R.S. 33:1321 et seq., which empowers any combination of parishes to agree to jointly construct, acquire or improve any public project, including causeways, bridges, highway facilities and other means of public transportation. La.R.S.33:1324. The GNOEC articles of incorporation provide that it is an agency and instrumentality of the parishes of Jefferson and St. Tammany. Article VI, § 22(g)(5) of the 1921 Louisiana Constitution was also added in 1952 to confer the necessary authority on the parishes of Jefferson and St. Tammany to construct, maintain and operate the causeway and issue revenue bonds for that purpose. However, that constitutional provision specifically states that such bonds shall not be or constitute a debt of the state. La.Const. of 1921, art. VI, § 22(g)."[1] *Page 2 
Article IV of the Articles of Incorporation adopted by GNOEC provides, "The objects and purposes for which it is being formed and organized are to construct, operate, and maintain in its corporate name, but for and on behalf of the Parishes of Jefferson and St. Tammany, a toll bridge or causeway and requisite approaches across Lake Pontchartrain and connecting said Parishes. . . ." Section IV goes on to say that the GNOEC has the right and power, "to sell, lease as lessor, exchange, transfer and dispose of any property or interest therein at any time acquired by it whenever said Commission shall determine that such property is notnecessary for its corporate purposes, and that it is in the best interest of said Commission and said two parishes. . . ." As ownership of the Causeway is necessary for the GNOEC to achieve its corporate purpose, selling it would be prohibited by Article IV of the Articles of Incorporation.
In addition, the General Bond Resolution adopted by GNOEC on September 25, 1986, contains a covenant with bondholders that the Commission will not sell, lease, or otherwise dispose of or encumber the Causeway or any part thereof until the bonds have been paid in full. To sell or lease the Causeway while the bonds remain outstanding would be a violation of this covenant.
Finally, once the bonds have been paid in full, state law provides that the bridge becomes property of the state. Section 9(3) of Act 762
of the 1986 Regular Session, which authorizes the GNOEC to sell bonds provides,
 The commission, acting on behalf of the parishes, shall continue to have the right and privilege to construct, operate and maintain the expressway over, under, through, and across any state owned lands, surfaced or submerged, necessary therefore; provided that when all bonds issued by the commission have been fully paid in principal and interest, the expressway shall become the property of the state of Louisiana and shall thereafter be operated and maintained by the state Department of Transportation and Development as a toll-free project and as part of the state highway system (emphasis added).
A sale or lease of the Lake Pontchartrain Causeway would violate the above stated Act as it would divest the State of its future right of owning and operating the Causeway.
In the event that the GNOEC amended its Articles of Incorporation to allow the bridge to be sold or leased, and a sale occurred in such a way that the bonds remained outstanding (and therefore the state ownership provision of Act 762 of the 1986 Regular Session was never triggered), it is also likely that the sale or *Page 3 
lease of the Causeway would require voter approval pursuant to La.R.S.33:4341[2], which provides,
 Any municipality, the City of New Orleans excepted, or any parish or other political subdivision or taxing district authorized to issue bonds under Article VI, Section 37, of the Constitution of Louisiana, all of which are hereinafter in this Subpart referred to as "municipality" or "parish", may sell or lease any revenue-producing properties owned by it, including all proper franchises to operate the properties for a term not to exceed sixty years, provided the governing authorities have been first authorized to do so by a vote of a majority of the qualified electors, voting at an election held for that purpose as herein directed. When a city, town, or village owns and operates a water, gas, or other revenue-producing public utility, serving customers outside the territorial limits of the city, town, or village, as is allowed by law, a negotiated sale of all of the connections and utility installations outside the area of the said city, town, or village and within the corporate limits of another city, town, or village may be made to the latter city, town, or village by negotiation and without any election, for such price as may be agreed upon between the parties. No election shall be required to authorize the sale or lease by any municipality or parish of revenue-producing water properties to any other municipality, parish, or other political subdivision.
Based on the above cited statute, before the GNOEC could lease or sell the Causeway, it would have to be authorized to do so "by a majority of the qualified electors, voting at an election held for that purpose." The exception in the second part of the statute, wherein a vote is not required, is not applicable as the GNOEC is not a "city, town, or village." *Page 4 
Accordingly, it is the opinion of this office that although there is currently no requirement of prior legislative approval to sell or lease the Lake Pontchartrain Causeway, the GNOEC is prevented from doing so by its Articles of Incorporation, which only permits the sale or lease of property not necessary for the GNOEC's corporate purpose. The GNOEC is further prohibited by its covenant with bondholders not to sell or lease the Causeway while the bonds are outstanding. Finally, Section 9(3) of Act 762 of the 1986 Regular Session prevents the GNOEC from selling or leasing the Causeway because the Act provides that the Causeway becomes property of the State when the bonds are paid off.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 BY: __________________________
 Lindsey K. Hunter
 Assistant Attorney General
 JDC/LKH/crt
[1] Pendergrass v. The Greater New Orleans Expressway Commission,144 F.3d 342, 344 (C.A.5 (La.), 1998).
[2] Whether or not a vote would be required depends on whether a court would determine that the Causeway is a "revenue producing public utility." However, two statutes suggest that it may be. First, La.R.S.48:853 provides that, "Any bridge constructed, acquired, extended, or improved under the terms of this Subpart for the use of which tolls are charged is a revenue producing public utility." Secondly, La.R.S. 33:4161
defines a "revenue producing public utility" as "any revenue-producing business or organization which regularly supplies the public with a commodity or service, including electricity, gas, water, ice, ferries, warehouses, docks, wharves, terminals, airports, transportation, telephone, telegraph, radio, television, drainage, sewerage, garbage disposal, emergency medical services, and other like services; or any project or undertaking, including public lands and improvements thereon, owned and operated by a municipal corporation or parish or other political subdivision or taxing district authorized to issue bonds under authority of Section 14 of Article XIV of the Constitution of Louisiana of 1921, from the conduct and operation of which revenue can be derived."